■ In the Matter of DEBORAH J. YETTER, Appellant-Respondent, v DANNY L. JONES, Respondent-Appellant. [706 NYS2d 782] —Mugglin, J. Cross appeals from an order of the Family Court of Tioga County (Argetsinger, J.), entered April 5, 1999, which, in a proceeding pursuant to Family Court Act article 6, ordered, *inter alia*, that the parties share joint custody of their children.

The parties' 12-year marriage ended in divorce in 1995. Custody of the three children of the marriage, born in 1985, 1987 and 1994, was awarded to petitioner pursuant to a 1996 Family Court order based upon the stipulation of the parties which granted respondent visitation every weekend and temporary physical custody if petitioner was ever hospitalized or an emergency existed rendering her unable to care for the children. In 1998, respondent petitioned for custody of the children but, prior to any evidentiary hearings, petitioner was hospitalized and respondent was granted temporary custody. Temporary custody was continued with respondent after all pending petitions were dismissed without prejudice.

Immediately thereafter, petitioner filed the instant petition seeking sole custody and respondent cross-petitioned for the same relief.* Following evidentiary hearings which included testimony from 13 witnesses and incorporated by consent the record of the evidentiary hearings from the dismissed Family Court proceedings, Family Court issued an order awarding the parties joint custody of the children. The children's primary residence was to be with respondent subject to visitation with petitioner on alternate weekends and one day during each school week and for the entire summer vacation, except the period from July 10 to August 15. In addition, the order prohibited petitioner's paramour from having contact with the children during overnight visitation and at all other times unless accompanied by petitioner. Both parties appeal from this order.

The evidence presented at the hearing established that petitioner has, for many years, suffered from depression and mood swings which commenced early in the marriage. She has been diagnosed as having a bipolar disorder which has precipitated instances of self-mutilation, a suicide attempt and numerous inpatient hospitalizations. According to the social worker/therapist who has been working with petitioner since 1994, her

---

* Also pending were five petitions alleging custody/visitation violations, three filed by petitioner and two filed by respondent.

condition is aggravated by stress and, if granted custody of the children, will probably lead to other episodes of self-mutilation, attempted suicide or hospitalization. In 1994, petitioner commenced a relationship with a convicted murderer incarcerated in a Department of Correctional Services facility in Chemung County. Petitioner and the two female children visited the inmate numerous times and petitioner acknowledged that it had been her intention to marry this inmate once he was released from prison.

Petitioner met her current paramour in 1998 when both were mental health inpatients. The paramour, now 19 years old, was hospitalized as the result of allegations by his mother that he had threatened to kill her. For several weeks, petitioner and the three children lived with the paramour in his mother's residence during which time petitioner, the paramour and the three children all slept together in the same room. Petitioner has not been employed since 1996 due to her condition and her sole source of income is public assistance.

Respondent has lived with a woman to whom he is not married for the past four years. The evidence established that while the children have resided with him, he has interfered with telephone contact with petitioner and is currently facing felony wiretap charges in Pennsylvania. These charges relate to respondent's alleged recording of telephone conversations between the children and petitioner and the children and the Law Guardian. Petitioner's testimony described respondent as violent toward her and abusive toward the children throughout the marriage.

Based upon our review of the record as a whole, we believe that Family Court erred in awarding joint custody. Joint custody is premised upon the concept that the best interests of the children require that important decisions concerning their lives be a considered determination of the parents and, in order to make such joint decisions, the parents are capable of and engage in cooperative civil communication concerning the children (*see generally, Braiman v Braiman*, 44 NY2d 584). A court should never impose joint custody where the parents are combative, accusatory and simply unable to jointly address the best interests of the children as a direct result of their hostility toward each other.

Here, there is no sound basis upon which to predicate an award of joint custody. The bitterness and hostility between these parents is abundantly evident from the record and a speculative and conjectural conclusion that they can put their differences aside, as Family Court opined, is simply an inade-

quate basis upon which to premise such a custodial arrangement. The record contains little evidence to suggest that these parties are now capable of communicating in a harmonious and reasonable fashion and would accept the joint responsibility for decision making with respect to the children (see, *Palmer v Palmer*, 223 AD2d 944, 945; *Matter of Monahan v Monahan*, 178 AD2d 829, 830). The evidence reveals that both parties have interfered with the establishment and continuation of a meaningful relationship with the other parent. Petitioner has repeatedly called respondent "jerk" and "sperm donor," and characterizes him as abusive toward the children. The instant proceedings have served to intensify the hostility between these parents. Accordingly, in the best interests of the children (see, *Friederwitzer v Friederwitzer*, 55 NY2d 89, 93-95), we conclude that joint custody is an unworkable solution.

On the record before us, we hold that an award of sole custody to respondent should be made. Although respondent may be characterized as a strict disciplinarian, Family Court correctly observed that respondent enjoys his children and interacts with them appropriately. During the time the children have been in the custody of respondent, they have done well in school and seem to have a much more stable environment than that which could be afforded by petitioner. The evidence demonstrates that petitioner has a recurring desire to place her interest ahead of those of her children. She has engaged in several relationships which establish a lack of good judgment and to which she has continually exposed the children. Petitioner has pursued these relationships even when it resulted in leaving the children alone and prompted removal of the eldest children from school, resulting in the filing of a neglect petition. While we are not unmindful of the expressed wishes of the children, they are not controlling especially where they may be a byproduct of the influence and invectiveness of petitioner. When all of the factors which are pertinent to a custody decision are objectively analyzed, as they must be, sole custody must be granted to respondent (see, *Matter of Perry v Perry*, 194 AD2d 837). We have considered the balance of the contentions of the parties and find them to be unpersuasive.

Next, we reject petitioner's contention that Family Court abused its discretion in failing to *sua sponte* order home studies as well as psychological reports of the parties, their paramours and the children. As a threshold matter, we note that neither party nor the Law Guardian requested such investigations prior to or during the hearings, and while petitioner's treating psychiatrist was not called to testify, there

was ample testimony concerning petitioner's mental health from caseworkers at the Tioga County Department of Social Services and petitioner herself. Moreover, there is no evidence in the record sufficiently raising an issue with respect to the mental or emotional health of respondent, and Family Court addressed the concern over the mental health of the eldest daughter by ordering respondent to have a mental health evaluation of her with further direction to follow any reasonable course of treatment recommended. In addition, the Law Guardian's report furnished Family Court with ample information concerning the home environments of both parties. Under these circumstances, we cannot find that Family Court abused its broad discretion by failing to order forensic mental health evaluations or home studies (*see, Thompson v Thompson*, 267 AD2d 516, 519).

Spain, J. P., Carpinello, Rose and Lahtinen, JJ., concur. Ordered that the order is modified, on the law and the facts, without costs, by reversing so much thereof as awarded the parties joint custody of their children; sole custody of the children is awarded to respondent; and, as so modified, affirmed.