■ LINDA POSPORELIS, Respondent, v HARRY POSPORELIS, Appellant. [838 NYS2d 681]—

Spain, J. Appeal from an order of the Supreme Court (Scarano, Jr., J.), entered February 1, 2006 in Saratoga County, which modified a prior judgment of divorce.

Plaintiff and defendant, the parents of a son (born in 1995), separated in 2000. On July 25, 2002, the parties entered into an oral stipulation in Supreme Court which, among other things, resolved in detail the issues of custody and parenting time. Prior thereto, the parties and the child participated in an independent forensic evaluation—pursuant to Supreme Court's order—by a psychologist, David Horenstein. Horenstein reported, among other things, that defendant "is grossly lacking in insight" into his role as a parent, which has led to a "pathological and inappropriate relationship" with his son; that defendant was alienating the child from plaintiff; that "[w]hat is distressing is the degree to which the [plaintiff] has been

excluded by virtue of the [defendant's] possessiveness, and attempts to control the child's emotional life"; and, finally, that "his behavior must change." Defendant agreed to the stipulation in open court stating—through his attorney—that he was "in full agreement with the observations that have been set forth in Dr. Horenstein's report." Pursuant to their stipulation, the parties agreed to share legal and physical custody of the child on an alternating week schedule, and to engage in family counseling to address parenting issues, parental alienation, and communication with the child. Further, the stipulation provided that if, "at the end of three months of counseling[,] the counselor's recommendation is that [d]efendant has failed to make progress in dealing with parental alienation issues, then primary physical custody would transfer to [p]laintiff" and defendant would be given weekly parenting time.

The custody stipulation was thereafter reduced to writing as part of a written stipulation which was incorporated but not merged into a judgment of divorce entered August 4, 2003. In November 2004, plaintiff moved by notice of motion and supporting affidavit requesting, among other things, that the judgment of divorce be modified to provide her with sole legal and physical custody of the child citing, among other things, defendant's failure to make progress in counseling, his continued efforts to alienate the child from her in violation of the matrimonial stipulation, and other harmful behavior. In response, defendant's counsel filed an affidavit in opposition to plaintiff's motion, alleging that a modification petition, rather than a motion, was the proper procedure to modify custody, and that plaintiff had failed to show a sufficient change in circumstances. Thereafter, in July 2005, Supreme Court—with the consent of the parties—ordered a second independent evaluation by another psychologist, Steven Feldman.

In August 2005, based upon Feldman's evaluation, plaintiff moved ex parte in Supreme Court, by order to show cause, for an immediate temporary order granting her sole legal and physical custody of the child with supervised parental access to defendant until the trial on the matter, which the court granted. Thereafter, defendant moved for restoration of unsupervised access, and requested another independent forensic evaluation of the child by a psychologist selected by defendant and a *Lincoln* hearing. The court decided to conduct a *Lincoln* hearing at the conclusion of the trial testimony, but otherwise denied defendant's motion, finding that an early trial would lead to a better resolution of the issues. At the conclusion of the trial, the court decided not to hold the *Lincoln* hearing "in order to spare the

child any further emotional strain" and rendered a decision and order granting sole physical and legal custody of the child to plaintiff, with limited, supervised parenting time to defendant until he satisfactorily completes the treatment recommended by Feldman. Defendant appeals, and we affirm.

Initially, defendant correctly points out that, in the absence of extraordinary circumstances, a court should not grant a temporary order of custody in an ex parte proceeding (*see Coon v Coon*, 29 AD3d 1106, 1110 n 2 [2006]; *Matter of Nicotera v Nicotera*, 222 AD2d 892, 894 [1995]; *see also Kronenberger v Kronenberger*, 204 AD2d 1059, 1060 [1994]). However, inasmuch as a permanent order of custody has now been entered following a trial, defendant's challenges to the temporary order are moot (*see Matter of Pecore v Pecore*, 34 AD3d 1100, 1102 [2006]; *Coon v Coon, supra* at 1110 n 2).

With respect to defendant's challenges to the procedure by which plaintiff sought a modification of the judgment of divorce, the parties mutually agreed at their 2002 oral stipulation that the intent of the custody provision was that plaintiff "would not have to file a petition to seek that affirmative relief." Ordinarily, in order to modify an order of custody, a party may proceed by petition (*see* Domestic Relations Law § 240 [1]) or by modification petition (*see* Family Ct Act § 172); plaintiff, by notice of motion, sought to enforce the matrimonial stipulation after final judgment had been entered. As this Court has stated, "a stipulation agreement may be enforced either by way of a motion in the action or proceeding in which it has arisen and which is still pending or by way of a separate action brought for that purpose" (*Bezio v Bezio*, 79 AD2d 837, 837 [1980], *lv denied* 53 NY2d 601 [1981]; *see Teitelbaum Holdings v Gold*, 48 NY2d 51, 54-55 [1979]; *Smith v Snide*, 63 AD2d 797, 797 [1978]). However, we find no error. Even assuming that plaintiff's use of a motion, in requesting a de facto modification of custody by enforcement of the marital stipulation, were deemed to be a procedural irregularity or mistake, it could properly be overlooked in the absence of any prejudice resulting to defendant (*see* CPLR 2001; *see also Brender v Brender*, 199 AD2d 665, 666 n 2 [1993]).

We next reject defendant's contention that plaintiff failed to establish the requisite change in circumstances. It is by now well settled that "an existing custody arrangement will not be modified unless changed circumstances have occurred since the entry of the prior custody order impacting the child's best interests" (*Matter of Deuel v Dalton*, 33 AD3d 1158, 1159 [2006]; *see Matter of Peck v Bush*, 35 AD3d 1118, 1118 [2006]; *Matter of*

*Ciccone v Grassi*, 31 AD3d 921, 922 [2006]). Here, plaintiff did not move for an order modifying the custody arrangement based on a change of circumstances but, rather, moved to enforce the terms of the stipulation itself. However, while the parties may have agreed to eliminate plaintiff's burden to establish a change in circumstances, a court cannot modify a custodial arrangement automatically upon one's failure to satisfy a condition or the happening of a specified event "without taking into account the child's best interests at that time" (*Matter of Brzozowski v Brzozowski*, 30 AD3d 517, 518 [2006]; *see Friederwitzer v Friederwitzer*, 55 NY2d 89, 95 [1982]; *see also Matter of Rhubart v Rhubart*, 15 AD3d 936, 937 [2005]). Assuming, without deciding, that plaintiff was required to establish a change in circumstances in order to modify the existing custody arrangement despite their contractual stipulation to the contrary, upon our review of the record, we find that burden was met. Notably, a "[c]ontinued deterioration in the [parties'] relationship can be a significant change in circumstances justifying a modification to sole custody" (*Matter of Rosario WW. v Ellen WW.*, 309 AD2d 984, 985-986 [2003]; *see Matter of Adams v Franklin*, 9 AD3d 544, 545 [2004]; *Matter of Harper v Jones*, 292 AD2d 649, 650 [2002]).

Here, pursuant to their stipulation and Horenstein's recommendation, the parties participated in six counseling sessions with James Ansel. In his report to Supreme Court dated June 14, 2003, Ansel specifically indicates that defendant had "not demonstrate[d] acceptance of the problem" and that his behavior in alienating the child from plaintiff had continued. Upon plaintiff's request for sole custody, the court wisely ordered the parties to again interview with Ansel in order to provide an updated report. However, after extensive efforts to contact Ansel proved unsuccessful, the court—on consent of the parties—ordered the evaluation by Feldman. Feldman's lengthy and detailed report of July 2005 observes that defendant continues to manipulate and alienate the child against plaintiff, yet still recommends joint custody with psychotherapy for the parties individually with the child and for the child by himself, and a stress prevention program for the parties. Two months later Feldman, after counseling the child, made some "final recommendations" noting, among other things, that defendant has an "apparent personality disorder," and recommending that defendant should have minimal access to the child, only under the supervision of "an *objective*, non-family member," and that he be held "accountable for any non-compliant behavior" (emphasis in original).

At trial, plaintiff testified to multiple examples of alienating

behavior engaged in by defendant, some of which were based upon conversations with the child. While defendant now asserts that many of these statements were hearsay, his failure to raise this issue as to nearly all of these statements renders the claim unpreserved for this Court's review (*see Matter of Bevins v Witherbee*, 20 AD3d 718, 720 [2005]). Moreover, any error was harmless in light of the overwhelming proof of defendant's alienating behavior (*see Matter of Nicole VV.*, 296 AD2d 608, 613 [2002], *lv denied* 98 NY2d 616 [2002]; *Matter of Jelenic v Jelenic*, 262 AD2d 676, 678 [1999]).

A mutual friend of the parties, whose son is best friends with the child, testified to defendant's negative comments about plaintiff to her in the presence of the child and his coaching of the child in advance of meetings with Feldman. Feldman testified primarily as to the findings in his court-ordered report and that he continued to believe that the recommendations in both his initial report and his "final recommendations" would serve the child's best interests, except that he had come to believe that the child should have more time with defendant as long as defendant engages cooperatively in therapy.

Defendant called Pankaj Kishore, a psychiatrist, who testified that defendant was suffering from anxiety and did not "seem to" have a personality disorder, and that, even if he had such an impairment, he could still be a good parent. However, he did not perform any clinical or forensic testing of defendant, did not review Feldman's report and never met with plaintiff or the child. Kishore also confirmed that he had recommended that defendant take medication and engage in therapy, but that he had no evidence that defendant pursued these recommendations.

In our view, Supreme Court properly determined that defendant, among other things, failed to make progress in dealing with his continuing efforts to interfere with the child's relationship with plaintiff and that "the best interests of this child require that plaintiff be granted sole physical and legal custody." Notably, while it is true that a determination of the child's best interests must be based on a totality of the circumstances (*see Matter of Eck v Eck*, 33 AD3d 1082, 1083 [2006]), it is equally true that evidence establishing that one parent alienates a child's affection for the other parent or otherwise "acts to discourage the continuation of a relationship with the latter has been held to be so inconsistent with the best interest of a child as to raise the probability of the unfitness of the offending party as a custodian" (*Matter of Grathwol v Grathwol*, 285 AD2d 957, 960 [2001]; *see Matter of Sloand v Sloand*, 30 AD3d 784, 785-786 [2006]; *Matter of Youngok Lim v Sangbom Lyi*, 299 AD2d

763, 764 [2002]). Moreover, in addition to defendant's alienating behavior, the record reveals other factors in support of the court's conclusion, including defendant's continued denial of his behavior and refusal to obtain counseling, which has had a "deleterious effect on the child," and other types of troubling behavior. While defendant's testimony consisted almost exclusively of denials to the allegations offered against him, the court specifically found the testimony of plaintiff to be credible and that of the mutual friend called by plaintiff to be "wholly credible," while also finding that their testimony regarding defendant's conduct was consistent with the behavior described in the findings of Feldman and Horenstein. Therefore, according great deference to the court's opportunity to assess the witnesses' credibility and demeanor, as well as its factual findings and conclusions, the decision to modify custody has a sound and substantial basis in the record and serves the best interests of the child (see Matter of Schermerhorn v Breen, 8 AD3d 709, 710 [2004]).

While defendant contends that Supreme Court failed to consider the child's wishes in its best interests analysis because it declined to conduct a Lincoln hearing, the court already had sufficient information as to the child's custodial preference and providently chose to spare the child any further stress (see Matter of Mitchell v Mitchell, 209 AD2d 845, 847 [1994]).

Contrary to defendant's contention, Supreme Court, by ordering that his parenting time be supervised by a neutral third party, did not unconstitutionally strip away his right to parental access with the child. Furthermore, although the court determined that defendant be "barred from all contact with the child, including telephone, mail, e-mail, and intervention by third parties on the defendant's behalf, other than . . . supervised visit[ation,]" it also indicated that, if he undertakes the recommended treatment, "the parties may re-negotiate the terms of [his] access to the child." As such, defendant's rights to communicate with the child have not been terminated but, rather, are properly conditioned upon his seeking treatment for the very impairments that he refuses to acknowledge and which the court found to be extremely detrimental to the child's emotional well-being.

While defendant correctly points out that "a party's right to [access] with his or her child[ ] cannot be conditioned on participation in, or completion of, counseling" (Matter of Gadomski v Gadomski, 256 AD2d 675, 677 [1998] [emphasis added]; see Matter of Remillard v Luck, 2 AD3d 1179, 1180 [2003]), such is not the case here. Instead, Supreme Court granted defendant supervised access, conditioning only his right

to have *unsupervised* parenting time on his completion of the treatment recommendations made by Feldman. Inasmuch as the court did not condition defendant's right to *any* parenting time with the child on his obtaining therapy (*compare Matter of Tucker v Tucker*, 249 AD2d 643, 645 [1998]; *Matter of Dennison v Short*, 229 AD2d 676, 677 [1996]), its directive in this respect was proper.

We lastly reject defendant's assertion that it was error to allow Feldman's final recommendations into evidence because, at the time this document was made, Feldman was acting as a counselor to the child rather than an unbiased expert evaluator. After filing his July 2005 report with the court, Feldman began seeing the child for counseling sessions based on the child's continued difficulty in coping with his parents' divorce, and submitted his "final recommendations" based on his impressions from these counseling sessions. Feldman testified that he felt ethically bound to submit the additional recommendations "because [his] primary concern was [the child's] best interests," and that he did not feel influenced by either parent. Accordingly, because the parties mutually consented to Feldman providing the court with an evaluation, and defendant had an opportunity to review the report and the "final recommendations" (*see Matter of Lincoln v Lincoln*, 24 NY2d 270, 273 [1969]; *Matter of Thaxton v Morro*, 222 AD2d 955, 957 [1995]; *see also Chrisaidos v Chrisaidos*, 170 AD2d 428, 428 [1991]) and to cross-examine Feldman at trial regarding these documents (*see* 22 NYCRR 202.16 [g]; *cf. Matter of Kranock v Ranieri*, 17 AD3d 1104, 1105 [2005], *lv denied* 5 NY3d 709 [2005]; *Murtari v Murtari*, 249 AD2d 960, 961 [1998], *appeal dismissed* 92 NY2d 919 [1998], *cert denied* 525 US 1072 [1999]), defendant "cannot now be heard to complain about the procedures used by [the] [c]ourt regarding the court-ordered reports" (*Matter of Thaxton v Morro, supra* at 957).

We have considered defendant's remaining contentions and find them to be unpersuasive.

Mercure, J.P., Carpinello, Lahtinen and Kane, JJ., concur. Ordered that the order is affirmed, without costs.