■ In the Matter of MARK G. PASSERO, Respondent, v CHRISTINE A. GIORDANO, Appellant. [861 NYS2d 479]—

Spain, J. Appeal from an order of the Family Court of Ulster County (Mizel, J.), entered March 21, 2007, which partially granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) were married in 1990, and two children, a daughter (born in 1991) and a son (born in 1993), were born of the union. The parties' 2003 final judgment of divorce, ordered on consent, provided for joint legal custody and a shared custodial access schedule. In 2004, the mother filed a petition seeking a modification reducing the children's access time with

the father. That petition was dismissed after fact finding based on the mother's failure to establish a change in circumstances. In 2005, the father commenced this proceeding by filing a modification petition seeking primary physical custody of both children. Following fact-finding and *Lincoln* hearings, Family Court—in a lengthy and detailed written decision—continued joint custody, but granted primary physical custody of the daughter to the father and primary physical custody of the son to the mother, who now appeals.

We affirm. The law is well settled that the "alteration of an established custody arrangement will be ordered only upon a showing of sufficient change in circumstances reflecting a real need for change in order to insure the continued best interest of the child" (*Matter of Van Hoesen v Van Hoesen*, 186 AD2d 903, 903 [1992]; *see Matter of Mabie v O'Dell*, 48 AD3d 988, 989 [2008]). "In deciding whether a change of custody is warranted, an existing arrangement borne of the parties' mutual agreement is a factor to be considered, along with the quality of the respective home environments, the child's wishes, the length of time the present custody arrangement has been in place and each parent's past performance, relative competence and capacity to provide for and direct the child's development" (*Matter of De Hamel v Porto*, 22 AD3d 893, 894 [2005] [citations omitted]; *see Matter of Lopez v Robinson*, 25 AD3d 1034, 1035 [2006]). Family Court's determination will be upheld unless it lacks a sound and substantial basis in the record (*see Matter of Gravelding v Loper*, 42 AD3d 740, 742 [2007]). In this case, according—as we must—deference to the credibility determinations made by Family Court (*see Matter of Lopez v Robinson*, 25 AD3d at 1035), there is ample support in the record warranting a modification of custody. We reject the mother's assertion that Family Court's determination of change in circumstances is based primarily upon her strict parenting style.

The record contains numerous examples of the mother's rigid supervision and controlling behavior, the totality of which supports Family Court's conclusion that the mother's evident inability to manage the increasing stresses of parenting had sufficiently impacted her relationship with her children so as to constitute a change in circumstances. Credible evidence also exists that the mother had repeatedly called the daughter derogatory names, denigrated the children's stepmother and frequently used vulgar language in conversation with her live-in boyfriend in front of the children. Additionally, her temper outbursts, her inappropriate use of corporal punishment (*see Matter of Gutiy v Gutiy*, 40 AD3d 1155, 1156 [2007]) and her practice of throwing

away the children's possessions without their consent or explanation on "clean out days" all amply reflect the mother's failure to foster their emotional well-being. These examples also constitute behavior which contributed to the tension between the mother and the daughter and were factors in the deterioration of the relationship between the parties during this relatively short—in duration—joint custody arrangement.*

Further, we agree with Family Court's conclusion that it was in the daughter's best interest to change the physical custody arrangement. While not dispositive, it is clear from the testimony of all involved that the daughter—who was 15 years old at time of the hearing—wants to live with her father, a factor which becomes more probative as any child advances in age (*see Matter of Cornell v Cornell*, 8 AD3d 718, 719 [2004]). The record further reflects a less stressful environment for the daughter at the father's home, an amicable relationship between the daughter and both her father and stepmother, and the father's use of age appropriate methods of discipline (*see Matter of Colwell v Parks*, 44 AD3d 1134, 1135 [2007]). The record supports the conclusion that the daughter's desire to live in a more flexible environment is not merely a consequence of her age but, rather, the result of a fundamental underlying conflict caused by the mother's inability or unwillingness to show flexibility as a parent in response to her daughter's increasing maturity and changing needs (*compare Matter of Mabie v O'Dell*, 48 AD3d at 989).

Finally, the record also supports Family Court's decision to separate the primary physical custody of these siblings in this joint custody arrangement. The order provides regular periods of time for the children to be together and is proper in light of, among other things, the son's relationship with his mother and his special needs (*see Matter of Delafrange v Delafrange*, 24 AD3d 1044, 1046 [2005], *lv denied* 8 NY3d 809 [2007]; *Matter of Jelenic v Jelenic*, 262 AD2d 676, 677 [1999]).

Cardona, P.J., Peters, Carpinello and Stein, JJ., concur. Ordered that the order is affirmed, without costs.

---

* Other proof of the mother's lack of sound judgment is shown in her admitting to reading the teenage daughter's diary without the child's permission or any credible justification. The mother also rented the house next door to their residence to a man known by her to be a level three sex offender, whose criminal act involved a 16-year-old female victim.