■ In the Matter of JOAN A. McGOVERN, Appellant, v FRANCIS M. McGOVERN, Respondent. [870 NYS2d 618]—

Spain, J. Appeal from an order of the Family Court of Saratoga County (Hall, J.), entered December 10, 2007, which partially granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify prior orders of custody.

Petitioner (hereinafter the mother), who resides in Alabama, and respondent (hereinafter the father), who resides in the Village of Ballston Spa, Saratoga County, are the parents of a son born in 1993. The son has lived with the father since July 2006. The parties apparently separated in 2005 and, after a trial in January 2006, the transcript for which is not in the record on appeal before us, Family Court denied the mother's request to relocate the son to North Carolina, where she and the son were then living, finding the mother had not met her burden of proof

to warrant that relocation (hereinafter the March 2006 relocation order).[1] The father was awarded custody unless the mother returned to Saratoga County; the son returned to live with his father in July 2006. By petition dated October 4, 2006, the mother—then residing in Alabama—moved pro se to modify the custody order, which resulted in a stipulated order of custody entered June 12, 2007 providing for joint legal custody, primary physical custody with the father and six weeks of summer and other parenting time with the mother, who bore the expenses for transporting the son for parenting time (hereinafter the June 2007 stipulated order).

Thereafter, the mother filed a petition dated May 31, 2007, as supplemented by amended petition dated October 1, 2007, to modify the custody order, seeking physical custody of the son during the school year with summer parenting time for the father. She alleged, among other things, that the father undermined her parenting role by denigrating her to the son, and that the father has refused to treat the son's attention disorder resulting in him failing several subjects.

Family Court conducted hearings in September and November, 2007, at which only the mother and son testified; despite the seriousness of the allegations, the father did not testify or call any witnesses. At the close of proof, the Law Guardian argued that while the son loves his dad, his emotional and physical needs were not being met living with him, and that he "desperately" wanted to resume living with his mother, with whom he shared a "rare" emotional bond. The Law Guardian stressed the father's failure to continue the son's medication or seek medical care or to address his psychological needs.

Family Court fully credited the mother's and son's testimony, including that the father had made disparaging remarks to him about the mother and had failed, for unexplained reasons, to give him his prescribed medication, and accepted the Law Guardian's representation that he wanted to return to his mother's home during the school year. The court—noting that "this is a closer case . . . than most"—found that there had not been a sufficient change in circumstances to justify a residential change for the son, but found sufficient proof to warrant modification by the addition of conditions requiring, among others, the father to ensure that the son receives his prescribed medications and medical and dental care.

---

1. In a separate order resolving the father's violation petition, Family Court found that the mother had willfully violated a September 13, 2005 temporary order of custody, presumably in favor of the father, although that order is not in the record.

On appeal, the mother, supported by the Law Guardian, argues that Family Court's decision denying a change in physical custody lacks a sound and substantial basis. To begin, while ordinarily the change of circumstances analysis is limited to the time period since the last custody order (*see Posporelis v Posporelis*, 41 AD3d 986, 988 [2007])—i.e., the June 2007 stipulated order—under the circumstances presented, we find that Family Court providently exercised its discretion in considering proof of changes since the March 2006 relocation order (*see e.g. Matter of Bodrato v Biggs*, 274 AD2d 694, 694-695 [2000]). The court explained that the mother's consent to the June 2007 stipulated order was merely an acknowledgment of the deficiencies in her pro se petition and did not constitute a concession that no substantial change had occurred regarding the son since his return to the father (in July 2006). Also, the June 2007 stipulated order would, in any event, be entitled to less weight than an order issued following a hearing (*see Matter of Kilmartin v Kilmartin*, 44 AD3d 1099, 1101 [2007]).

Next, we agree with the mother's contention that she established that, since the son resumed living with the father, a sufficient change in circumstances had occurred that impacted upon his best interests, requiring reconsideration of the physical custody arrangement (*see Posporelis v Posporelis*, 41 AD3d at 988; *see also Matter of Gorham v Gorham*, 56 AD3d 985, 987 [2008]). The uncontroverted testimony, which Family Court found to be credible, was that the son had failed three classes during ninth grade (2006-2007), the year he lived with his father, necessitating summer school that precluded his normal extended summer visitation with his mother in 2007. The son testified at the hearing that his untreated attention disorder made it difficult to concentrate in school and, since he returned to his father, he had not received his medicine or counseling for his attention disorder and depression, which he had found helpful. He testified[2] that, in his opinion, living with his mother, who had guided his homework and with whom he described

---

2. Unfortunately, the Law Guardian's written request to permit an in camera inquiry with the son in lieu of testimony in order to avoid family acrimony was denied, although no discussion of the matter appears in the record. While the decision with respect to the need for such an interview lies within Family Court's discretion (*see Matter of Farnham v Farnham*, 252 AD2d 675, 677 [1998]), "a child, already suffering from the trauma of a broken home, should not be placed in the position of having [his or her] relationship with either parent further jeopardized by having to publicly relate [his or her] difficulties with them or be required to openly choose between them" (*Matter of Lincoln v Lincoln*, 24 NY2d 270, 272 [1969]). Given his age and the specific request, his preferences were entitled to great weight, and an interview in camera (even one narrow in scope addressing the child's preferences

having a "great" relationship, would be better for him during the school year. While he believed that his father had taken good care of him and attended his sporting events, he has experienced anger against his father; he testified to the negative impact upon him due to his father's remarks disparaging the mother, including that she would move back "if she love[d]" him which made him feel "very bad." The mother testified that the medication and counseling had been helpful to her son; when he returned to live with his father, she sent medication and told the father about it and that he would need to find a doctor to oversee his care. She lives with her fiancé in Alabama and, at the time of the hearing, was out of work awaiting shoulder surgery and paying reduced child support to the father.

In view of the unrefuted evidence that the father disparaged the mother and failed to attend to the son's known medical needs, and the son's poor academic performance and fear of the father's seizure disorder,[3] we find ample evidence of a change in circumstances necessitating reconsideration of the son's best interests (*see Posporelis v Posporelis*, 41 AD3d at 988; *Matter of Filippelli v Chant*, 40 AD3d 1221, 1222 [2007]; *Matter of Gutiy v Gutiy*, 40 AD3d 1155, 1156 [2007]; *Matter of Shehata v Shehata*, 31 AD3d 773, 774 [2006]).[4] Turning to the next step of the analysis, the primary concern in any custody determination—including one, as here, that would effectively permit relocation to the noncustodial parent—is the best interests of the child (*see Matter of Gorham v Gorham*, 56 AD3d 985 [2008], *supra*; *Matter of Gutiy v Gutiy*, 40 AD3d at 1156; *Matter of Bodrato v Biggs*, 274 AD2d at 695). The relevant factors include stability for the child, the length of the original placement, the quality of the home environments, each parent's past performance, rela-

and reasons therefore, in conjunction with testifying in court to other matters) would have limited the harm and would have been "far more informative and worthwhile than the traditional procedures of the adversary system—an examination of the child under oath in open court" (*id.* at 272; *see Matter of Kocowicz v Kocowicz*, 306 AD2d 285, 285-286 [2003]; *Matter of Daniels v Guntert*, 256 AD2d 940, 942 n [1998]; *cf. Matter of Bougor v Murray*, 283 AD2d 695, 696 [2001]).

3. Neither witness addressed the allegation that the son had been left home for a week during the father's January 2007 hospital stay.

4. While we ordinarily accord deference to Family Court's factual and credibility determinations (*see Matter of Mallory v Jackson*, 51 AD3d 1088, 1090 [2008], *lv denied* 11 NY3d 705 [2008]; *Matter of Goldsmith v Goldsmith*, 50 AD3d 1190, 1192 [2008]), the court here expressly credited the testimony of the mother and son, but concluded that it did not support a finding of a sufficient change in circumstances warranting reevaluation of the child's best interests. On that threshold question (*see Matter of Chase v Benjamin*, 44 AD3d 1130, 1130-1131 [2007]), credibility was not an issue (*see Matter of Ashley RR.*, 30 AD3d 699, 702 [2006]) and deference is not warranted. The court made no finding on best interests.

tive fitness and ability to guide and provide for the child's development—both intellectually and emotionally—and the child's wishes (*see Matter of Goldsmith v Goldsmith*, 50 AD3d at 1191-1192; *Matter of Shehata v Shehata*, 31 AD3d at 774).

While not determinative, the wishes of an almost 14-year-old child are certainly entitled to great weight, particularly given the legitimate academic, medical and other bases for his view (*see Matter of Cornell v Cornell*, 8 AD3d 718, 719 [2004]; *see also Matter of Manfredo v Manfredo*, 53 AD3d 498, 500 [2008]). Also, while the decision is permissive whether to draw a negative inference from a parent's failure to testify (*see Matter of Nassau County Dept. of Social Servs. v Denise J.*, 87 NY2d 73, 79-80 [1995]; *Matter of Collin H.*, 28 AD3d 806, 809 [2006]; *Matter of Bjorkland v Eastman*, 279 AD2d 908, 910 [2001]; *cf. Matter of John HH. v Brandy GG.*, 52 AD3d 879, 880 [2008]), we believe that such an inference is warranted here, given the seriousness of the allegations that the father utterly failed to meaningfully refute. Family Court made no best interest findings and, unfortunately, the record does not contain sufficient information addressing the relevant factors to permit our doing so (*see Matter of Whitaker v Murray*, 50 AD3d 1185, 1186-1187 [2008]; *cf. Matter of Valentine v Valentine*, 3 AD3d 646, 647 [2004]). Accordingly, the matter is remitted to Family Court for best interest findings and a determination based upon this record, and consideration of any additional matters or imposition of additional conditions deemed appropriate under current circumstances. The court may, of course, accept a stipulated settlement or, if appropriate, hear additional relevant evidentiary proof concerning events subsequent to this trial and, if requested by the Law Guardian, shall hold an in camera interview with the child. The additional conditions contained in the court's modification order remain in effect, pending further proceedings.

Cardona, P.J., Rose, Kavanagh and Stein, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as partially dismissed petitioner's application; matter remitted to the Family Court of Saratoga County for further proceedings not inconsistent with this Court's decision and, pending such further proceedings, temporary physical custody shall remain with respondent and Family Court's order entered December 10, 2007 shall remain in effect; and, as so modified, affirmed.

