■ In the Matter of RACHEL A. PREFARIO, Respondent, v CHRISTOPHER W. GLADHILL, Appellant. [935 NYS2d 671]—

Spain, J.

The parties, the parents of a son born in 1999, were thereafter married and then divorced in 2004. Pursuant to a Family Court order based upon a stipulation entered in August 2005, respondent (hereinafter the father) was granted sole custody of the child. Petitioner (hereinafter the mother) was granted specific parenting time, including specific holiday visitation; alternate weekends from Friday evening to Sunday evening; while school is in session, every Wednesday evening and, when school is not in session, every Wednesday evening overnight to Thursday morning; and two uninterrupted nonconsecutive weeks for each parent during the summer. Additionally, the father was directed to keep the mother informed with respect to events or meetings related to the child's education, athletic involvements and other extracurricular activities so that the mother could attend and participate in such events. Both parents were ordered to share other relevant information

regarding school activities, teacher conferences, report cards and doctor visits so that they could be involved in those aspects of the child's life.

In January 2010, the mother commenced the instant modification proceeding seeking full custody based upon a number of assertions, including the father's failure to cooperate with her visitation schedule and his failure to keep her informed in accordance with the order. Following a hearing, Family Court awarded the parties joint custody of the child with primary residence with the father and, among other things, modified the visitation schedule to provide the mother with more parenting time by extending the mother's alternate weekends to begin on Thursday after school until Monday morning, together with overnight visits on alternate Wednesdays during the school year, as well as imposing an alternate weekly shared custody arrangement during the summer and detailed holiday directions. The specificity of the order appears to be an effort to eliminate much of the need for the parties to communicate regarding visitation. The father now appeals, challenging the joint custody determination and the expansion of the mother's parenting time.

The burden of showing a change in circumstances warranting modification of a custody order is upon the petitioner, here the mother (*see Matter of Opalka v Skinner*, 81 AD3d 1005, 1005 [2011]), and " '[i]t is only when this threshold showing has been made that Family Court may proceed to undertake a best interest analysis' " (*Matter of Kerwin v Kerwin*, 39 AD3d 950, 951 [2007], quoting *Matter of Meyer v Lerche*, 24 AD3d 976, 977 [2005]; *accord Matter of Joseph A. v Jaimy B.*, 81 AD3d 1219, 1221 [2011]). An order entered on stipulation without a hearing is entitled to less weight (*see Matter of Goodfriend v Devletsah-Goodfriend*, 29 AD3d 1041, 1042 [2006]; *Redder v Redder*, 17 AD3d 10, 13 [2005]). Additionally, this Court has the authority to independently review the record where, as here, Family Court failed to make adequate factual findings to support its determinations (*see Matter of Whitcomb v Seward*, 86 AD3d 741, 742 [2011]; *Matter of Drew v Gillin*, 17 AD3d 719, 720 [2005]).

The record shows that since the 2005 custody order, the father has remarried and lives with his spouse, her two daughters, a son of their marriage and the child at issue in this proceeding. With his father's encouragement and involvement, the child has developed an avid interest in sports, mainly baseball and soccer, which take up much of the child's free time; however, these commitments have disrupted the mother's visitation schedule. The mother has not previously brought a visitation violation petition asserting her rights under the 2005 order, despite the

reduction in her parenting time attributable to the child's activities. Additionally, although she raised the issue in her 2010 modification petition, she did not bring an enforcement proceeding when the father refused to let her take the child out of the country for her 2009 summer vacation and denied her a Christmas day visit that same year. The record also reflects that the father has been somewhat passive in arranging occasional weeknight dinner visits between the mother and the child as provided in the 2005 order, in not offering and providing the mother with reasonable makeup time when the child's athletic schedules conflicted with his time with his mother, and in not affirmatively providing the mother with the relevant information and schedules he received affecting the child, especially information about the child's health records, health reports and doctor appointments. While the parties have a history of conflict and poor communication, the father bears the responsibility for overtly frustrating their communication by, among other things, not answering his home phone or by simply turning off his cell phone.

An inordinate portion of the hearing focused on the mother's claim that the father engaged in "parental alienation" by holding the child out to have his surname, while the child's legal name reflects her surname. Despite a Supreme Court decision denying the father's request—over the mother's objection—to legally change the child's surname to his surname, it appears that the father thereafter unilaterally identified the child using his surname at every opportunity, except where the use of the child's legal surname is required. While the father's behavior in this regard does not appear to pose a problem for the child and does not, as alleged, constitute parental alienation, it can be viewed as being somewhat obsessive and contentious. The record also reflects that the child's trial attorney made it clear throughout the hearing that the child would like to spend more time with his mother. In view of the foregoing, and despite the court's failure to articulate any specific findings to support its determination that a change in circumstances had been established, we find that the requisite change in circumstances has been shown (*see Matter of Bedard v Baker*, 40 AD3d 1164, 1665 [2007]).

Next, in deciding whether the modification of a custody order is warranted, "an existing arrangement borne of the parties' mutual agreement is a factor to be considered, along with the quality of the respective home environments, the child's wishes, the length of time the present custody arrangement has been in place and each parent's past performance, relative competence

and capacity to provide for and direct the child's development" (*Matter of De Hamel v Porto*, 22 AD3d 893, 894 [2005] [citations omitted]; *see Matter of Lopez v Robinson*, 25 AD3d 1034, 1035 [2006]). Moreover, Family Court's best interests determination will be not be upheld if it lacks a sound and substantial basis in the record (*see Matter of Gravelding v Loper*, 42 AD3d 740, 742 [2007]).

Here, the child has been in the sole custody of the father for over five years and, by all accounts, he is thriving. He is well rounded and adjusted, has excelled in school and enjoys athletic activities. When the child is with his mother, most of the transportation is provided by his maternal grandfather due to the mother's work schedule. When the child stays overnight with the mother he either sleeps at his grandfather's home or at his mother's residence, where he is without a bedroom and sleeps either on the floor or on a pull out bed in her living room. Notably, at the time of Family Court's bench decision, the court directed her to provide him with a bedroom within three months. Upon review of the record, we find that, notwithstanding the father's shortcomings, there is not a sound basis for the court's award of joint custody, given both parents' inability to communicate and their past performance, which clearly demonstrate their lack of ability to make joint decisions with respect to the child (*see Matter of Murray v McLean*, 304 AD2d 899, 900 [2003]; *Matter of Yetter v Jones*, 272 AD2d 654, 655 [2000]). Accordingly, we reverse the award of joint custody and direct that sole custody with the father, as provided in the parties' 2005 stipulated order, should resume.

Next, under these circumstances, Family Court's expansion of the mother's parenting time should be adjusted. While not dispositive, the expressed wishes of the child are a factor in determining the need to modify an existing order to ensure the continued best interest of the child (*see Matter of Goodfriend v Devletsah-Goodfriend*, 29 AD3d at 1042; *Matter of Daniels v Guntert*, 256 AD2d 940, 941 [1998]). Here, there is nothing confidential about the child's desire to spend more time with his mother as advocated by his attorneys both at the trial and appellate levels. In our view, Family Court's expansion of the child's access to his mother was warranted, but it is in certain respects too broad. Mindful of the child's age and his wishes, but also cognizant of his busy schedule and the mother's work schedule, we modify the visitation order to reflect a more workable balance of the child's time with both parents. The alternate Wednesday overnight visit shall be reduced to an alternate Wednesday evening visit, i.e., from the time the child gets out of

school or, when school is not in session, starting at 4:00 P.M., and lasting until 8:30 P.M., subject to make up within 10 days if it conflicts with another scheduled event. This Wednesday evening schedule, as well as the alternate weekend schedule from Thursday at 4:00 P.M. until Monday at 8:00 P.M., shall continue during the summer. In addition, each parent shall have two nonconsecutive uninterrupted weeks during the summer between the end of the school year and the first of September; the mother shall designate her two weeks by giving written notice to the father by May 1 of each year and the father shall designate his two weeks in writing to the mother by May 15 of each year.

Next, as far as communication with respect to sports, other activities and appointments, the father shall make arrangements and decide on all scheduling and sign-ups for the child's doctors, dentists and sporting activities, making all efforts possible not to unnecessarily obstruct the mother's visitation schedule. The father shall be personally responsible for keeping the mother promptly informed about his choice of doctors, the child's medical appointments, medical reports and all athletic practice and game schedules. As for the child's school and extracurricular activities, the father shall also be personally responsible for keeping the mother informed, without delay, with respect to all school reports and the times of all meetings, teacher conferences and other school related activities.

We have considered the father's remaining contentions and find them to be without merit.

Mercure, A.P.J., Peters, Rose and Kavanagh, JJ., concur. Ordered that the order is modified, on the law and the facts, without costs, by (1) awarding respondent sole legal custody of the child, (2) modifying the alternate Wednesday evening and summer schedules as set forth in this Court's decision, and (3) requiring respondent to actively communicate with petitioner as set forth in this Court's decision; and, as so modified, affirmed.