■ In the Matter of SEAN A. CASAROTTI, Respondent, v MARY W. CASAROTTI, Appellant. [967 NYS2d 783]—

Spain, J. Appeal from an order of the Family Court of Madison County (DiStefano, J.), entered August 23, 2012, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the divorced parents of two daughters (born in 1992 and 1998) and a son (born in 1994). The youngest daughter (hereinafter the child) is the subject of this proceeding. The family lived together in northern California until the parties' separation in 2000, at which time the mother moved with the children to New York. The parties later consented to joint custody of the children and a stipulation to that effect was

incorporated but not merged into their 2007 judgment of divorce. In accordance with the stipulation, the mother maintained primary physical custody of the children in New York and the father, who remained in California, was granted liberal parenting time during weekends, winter holidays and summer vacations. In July 2012, the father commenced this custody modification proceeding, seeking primary physical custody of the child, alleging that the two older children had moved out of the mother's house and that the mother was emotionally abusive to the child, who had expressed her wish to live with him. Following an August 2012 hearing at which the parties, the 14-year-old child and her 20-year-old sister testified, Family Court granted the father's petition and awarded him primary physical custody, while otherwise maintaining joint custody, and granted the mother liberal parenting time.[1] The mother now appeals.

To modify an existing custody order, "the party seeking the modification [must] demonstrate[ ] a sufficient change in circumstances since entry of the prior order to warrant modification thereof in the child's best interest" (*Matter of Hamilton v Anderson*, 99 AD3d 1077, 1078 [2012] [internal quotation marks and citation omitted]; *see Matter of Smith v Barney*, 101 AD3d 1499, 1500 [2012]; *Matter of Michael GG. v Melissa HH.*, 97 AD3d 993, 994 [2012]). Notably, where the prior order was entered on the parties' consent, it is entitled to less weight (*see Matter of Youngs v Olsen*, 106 AD3d 1161, 1163 [2013]; *Matter of Rosi v Moon*, 84 AD3d 1445, 1446 [2011]). Moreover, "while not dispositive, the express wishes of older and more mature children can support the finding of a change in circumstances" (*Matter of Burch v Willard*, 57 AD3d 1272, 1273 [2008]; *accord Matter of Dorsa v Dorsa*, 90 AD3d 1046, 1047 [2011]; *see Matter of Oddy v Oddy*, 296 AD2d 616, 617 [2002]). Although Family Court did not expressly address whether the father demonstrated a sufficient change in circumstances to warrant modification, "this Court has the authority to independently review the record" (*Matter of Prefario v Gladhill*, 90 AD3d 1351, 1352 [2011]; *see Matter of Bedard v Baker*, 40 AD3d 1164, 1165 [2007]).

Testimony at the hearing established that the relationship between the mother and the child had, to an extent, deteriorated and had become strained as the child matured, resulting in escalating verbal confrontations approximately once a week that sometimes involved the mother directing profanity and

---

1. No stay was requested and the child reportedly moved immediately to live with her father in California in late August 2012.

vulgarities at the child. The child testified that, on at least one recent occasion, the mother told her to move out of the house and, when the child left the house, the mother locked the door behind her. The child spent the evening on the front porch, called her sister and father because she did not know where to go and attempted unsuccessfully to find somewhere to pass the night. Later that night, the mother allowed her back into the house. The sister and mother testified that the mother similarly kicked the two older children out of the house several times, which resulted in the sister moving out and the brother spending significant time periods at the home of a family friend.

The record also indicates that the mother made no effort to foster a meaningful relationship between the father and the child and that she even, at times, impeded their communication. Particularly troubling is the testimony from the father, the sister and the child that the mother threatened the children with negative consequences should they testify in support of the father's requested custody modification. The sister testified that her mother threatened to cut off her financial aid for college and that she was worried that she would be denied access to her half brother, the mother's child from a subsequent relationship who also lived in the mother's home. The child testified that her mother told her that there would be consequences to testifying and "sort of" told her that these consequences would be "bad," but she was reluctant to elaborate on these threats in further detail.

Although not an issue directly raised on appeal, the Attorney for the Child and the father both requested that Family Court hold a *Lincoln* hearing (*see Matter of Lincoln v Lincoln*, 24 NY2d 270 [1969]) rather than require the child to testify in open court. Unfortunately, this request was denied and, after the mother refused to consent to the child testifying outside of the parties' presence, the child had to testify under oath in front of both parents. While we recognize that Family Court has the discretion to decide whether a *Lincoln* hearing is appropriate (*see Matter of McGovern v McGovern*, 58 AD3d 911, 913 n 2 [2009]; *Matter of Farnham v Farnham*, 252 AD2d 675, 677 [1998]), it was clearly an abuse of discretion for the court to put the child in this awkward position, notwithstanding that her wishes were already known to her parents, particularly considering the testimony that the mother attempted to influence the testimony of her children. We again emphasize that " 'a child . . . should not be placed in the position of having [his or her] relationship with either parent further jeopardized by having to publicly relate [his or her] difficulties with them' " when explaining the

reasons for his or her preference (*Matter of McGovern v McGovern*, 58 AD3d at 913 n 2, quoting *Matter of Lincoln v Lincoln*, 24 NY2d at 272). Given the circumstances of this case and the fact that—at her age—her preference would be entitled to great weight, the record indicates that a *Lincoln* hearing would have limited the risk of harm and "would have been far more informative and worthwhile than . . . an examination of the child under oath in open court" (*Matter of McGovern v McGovern*, 58 AD3d at 914 n 2 [internal quotation marks and citation omitted]; *see Matter of Minner v Minner*, 56 AD3d 1198, 1199 [2008]; *see also Matter of Justin CC. [Tina CC.]*, 77 AD3d 207, 209-210 [2010]). In any event, although the child hesitated to fully articulate the mother's threats, the record demonstrates the mother's willingness to put her own interests before the child's interest in having healthy relationships with both of her parents.

Significantly, Family Court found that the child was "capable," "mature" and adamant in her desire to spend more time with her father. According deference to Family Court's credibility determinations, we agree that the breakdown in communication between the mother and the child, the mother's refusal to facilitate a relationship between the father and the child, and the child's express desire to live with her father constituted a sufficient change in circumstances to warrant modification of the prior custody order (*see Matter of O'Connell v O'Connell*, 105 AD3d 1367, 1367 [2013]; *Matter of Dorsa v Dorsa*, 90 AD3d at 1047; *Matter of Burch v Willard*, 57 AD3d at 1273; *Matter of Passero v Giordano*, 53 AD3d 802, 803-804 [2008]; *Matter of Manfredo v Manfredo*, 53 AD3d 498, 499 [2008]).

Taking into account "the relative fitness, stability, past performance, and home environment of the parents, as well as their ability to guide and nurture the children and foster a relationship with the other parent" (*Matter of Arieda v Arieda-Walek*, 74 AD3d 1432, 1433 [2010] [internal quotation marks and citation omitted]; *see Matter of Melody M. v Robert M.*, 103 AD3d 932, 933 [2013]; *Matter of Smith v Barney*, 101 AD3d at 1501), we are likewise persuaded that Family Court's award of primary physical custody to the father was in the child's best interests (*see Matter of Zwack v Kosier*, 61 AD3d 1020, 1022 [2009], *lv denied* 13 NY3d 702 [2009]; *Matter of Burch v Willard*, 57 AD3d at 1273). The record demonstrates that both parties love the child. While the mother had provided a fit home for many years, the father and the child convincingly testified that the child's needs would be equally fulfilled in California.

Significantly, the father communicated more effectively with the child, enabling him to better foster her emotional and intellectual development. Moreover, "the evidence indicate[d] that the father was more willing than the mother to allow the child to . . . maintain [a] relationship[ ] with the other parent" (*Matter of Zwack v Kosier*, 61 AD3d at 1022). Although awarding the father physical custody of the child separates her from her siblings, the record reveals that the two older children spend significant time away from the mother's home and the child was confident that she could remain close to her siblings despite her relocation. In that respect, we further find that the relocation was in the child's best interests (*see id.*; *Matter of Messler v Messler*, 218 AD2d 157, 158 [1996]),[2] particularly in light of Family Court's liberal award of visitation to the mother, in both California and New York, on weekends, school breaks, winter holidays and summer vacations. Finally, we discern no error in the court's division of the future travel expenses associated with the mother's visitation, which requires the father to pay the full cost of one round trip for the child to visit the mother each year, with the parties equally sharing the cost of any additional trips.

Rose, J.P., McCarthy and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs.

2. The mother waived any argument that it was error for Family Court to bypass a relocation analysis by failing to advance that argument in that court (*see Matter of Clark v Ingraham*, 88 AD3d 1079, 1079 [2011]). However, because "the relocation issue is enmeshed with the best interests analysis," we have considered it among the other relevant factors in reviewing whether the custody modification was in the child's best interests (*see Matter of Zwack v Kosier*, 61 AD3d at 1023).