Garry, J.
Appeal from an order of the Family Court of Greene County (Tailleur, J.), entered August 31, 2012, which granted petitioner’s application, in a proceeding pursuant to Family Ct Act article 6, for modification of a prior order of custody.
*1041 Pursuant to a 2003 separation agreement that was later incorporated into a judgment of divorce, petitioner (hereinafter the father) and respondent (hereinafter the mother) had joint legal custody of the parties’ two sons (born in 1996 and 1998) and the mother had primary physical custody. In March 2012, the father commenced this modification proceeding seeking primary physical custody. Following a fact-finding hearing and a Lincoln hearing, Family Court granted the petition. The mother appeals. Modification of an existing custody arrangement must be predicated upon a showing of changed circumstances that require alteration to ensure the best interests of a child (see Matter of Hamilton v Anderson, 99 AD3d 1077, 1078 [2012]; Matter of Grant v Grant, 47 AD3d 1027, 1028 [2008]). We agree with Family Court that the father met this burden. The father testified that the mother failed to inform him immediately when the older son was diagnosed with cancer in October 2011, did not advise the father that surgical treatment was required until after the surgery occurred, and refused to sign authorizations permitting the father to speak with the son’s doctors until the father commenced a court proceeding to compel her to do so. He further testified that the mother interfered with his relationship with the sons by, among other things, limiting their ability to communicate with him on the Internet, listening in on their telephone conversations with him, and refusing to be flexible when their scheduled activities interfered with visitation arrangements. While the mother denied some of these claims, Family Court credited the father, and this Court defers to such assessments (see Matter of Darrow v Darrow, 106 AD3d 1388, 1390 [2013]; Matter of Torkildsen v Torkildsen, 72 AD3d 1405, 1407 [2010]). Further, “while not dispositive, the express wishes of older and more mature children can support the finding of a change in circumstances” (Matter of Burch v Willard, 57 AD3d 1272, 1273 [2008]; accord Matter of Casarotti v Casarotti, 107 AD3d 1336, 1337 [2013], lv denied 22 NY3d 852 [2013]), and both sons — then 13 and 15 years old — strongly and openly expressed a preference to reside with the father. Accordingly, Family Court properly turned to an analysis of their best interests.
Upon considering “the relative fitness, stability, past performance, and home environment of the parents, as well as their ability to guide and nurture the children and foster a relationship with the other parent,” we find no reason to disturb Family Court’s determination (Matter of Arieda v Arieda-Walek, 74 AD3d 1432, 1433 [2010] [internal quotation marks and citation omitted]; see Matter of Smith v Barney, 101 AD3d 1499, 1500-1501 [2012]; Matter of Jeker v Weiss, 77 AD3d 1069, 1070 *1042 [2010]). The evidence established that both parties are loving parents who were aware of and attentive to the sons’ medical and educational needs and were capable of providing them with suitable homes. Family Court credited the mother for her success as the sons’ primary caretaker since 2003, noting that they had done well academically and athletically in her care. Nevertheless, the evidence supports the court’s further observation that her hostility toward the father had eventually alienated the sons from her as well as interfered with their relationship with him — conduct “so inconsistent with the best interests of the [sons] as to, per se, raise a strong probability that [the mother] is unfit to act as custodial parent” (Matter of Greene v Robarge, 104 AD3d 1073, 1075-1076 [2013] [internal quotation marks and citations omitted]; see Jeannemarie O. v Richard P., 94 AD3d 1346, 1348 [2012]). Additionally, the mother acknowledged that she did not permit the sons to visit their maternal grandparents, despite the sons’ desire to do so, because her relationship with the grandparents had broken down. By contrast, the father testified that he would encourage the sons to visit these grandparents, as well as other extended family members who lived near his Brooklyn home; he further testified that he would encourage visits with the mother, and that he had provided them with cell phones to maintain contact with her while they temporarily resided with him. The record thus supports the conclusion that the father is more likely than the mother to support and nurture the sons’ relationship with the other parent (see Matter of Anthony MM. v Jacquelyn NN., 91 AD3d 1036, 1038 [2012]).
Although a move to Brooklyn would require the sons to leave the Greene County school district they had attended since 2003, the record reveals that academic and athletic advantages were available to them in Brooklyn, and both sons wished to pursue these opportunities. We note the mother’s argument relative to an issue about which Family Court found the father to have been untruthful, but find that the court took appropriate steps addressing this matter, and the record supports the conclusion that there was no resulting deleterious impact upon the sons. Considering all of the evidence — and, in particular, the mother’s hostility toward the father and the sons’ strongly expressed preference to reside with him — we find a sound and substantial basis in the record for the conclusion that granting physical custody to the father was in their best interests (see Matter of Casarotti v Casarotti, 107 AD3d at 1339-1340; Matter of Burch v Willard, 57 AD3d at 1273; Matter of Passero v Giordano, 53 AD3d 802, 804 [2008]).
Peters, EJ., Lahtinen and Rose, JJ., concur. Ordered that the order is affirmed, without costs.