■ In the Matter of KAREN M. KNIGHT, Respondent, v BRIAN C. KNIGHT, Respondent. [940 NYS2d 325]—

Egan Jr., J.

We affirm. Preliminarily, to the extent that Family Court's bench decision and resulting orders do not fully comport with the requirements of CPLR 4213 (b), the rationale for the court's determination nonetheless may be discerned and, in any event, the record before us is sufficiently developed to permit this Court to exercise its independent review power in this regard (*see Matter of Cree v Terrance*, 55 AD3d 964, 966 [2008], *lv denied* 11 NY3d 714 [2008]; *Matter of Hall v Keats*, 184 AD2d 825, 825-826 [1992]; *compare Matter of McGovern v McGovern*, 58 AD3d 911, 915 [2009]; *Matter of Whitaker v Murray*, 50 AD3d 1185, 1186-1187 [2008]).

Turning to the merits, "[a]n existing custody arrangement may be modified upon a showing that there has been a subsequent change of circumstances and modification is required to ensure the best interests of the children" (*Matter of Hayward v Thurmond*, 85 AD3d 1260, 1261 [2011] [internal quotation marks and citations omitted]; *accord Matter of Anthony MM. v Jacquelyn NN.*, 91 AD3d 1036, 1037 [2012]). Once a change in circumstances has been established, the court must determine whether the proposed modification will serve the children's best interests—an inquiry that involves consideration of a number of factors, including—among other things—

"maintaining stability in the children's lives, the quality of [the] respective home environments . . . and [each parent's] ability to provide for and guide the children's intellectual and emotional development" (*Matter of Opalka v Skinner*, 81 AD3d 1005, 1006 [2011]; *Matter of Rikard v Matson*, 80 AD3d 968, 969 [2011], *lv denied* 16 NY3d 709 [2011]). Here, the father's sexual abuse of the eight-year-old daughter of his live-in girlfriend (who had resided in his household for five years at the time of the offense), his subsequent attempts to minimize his relationship with the victim and his corresponding lack of insight as to the impact that his conduct and resulting conviction had upon both the victim and his biological children reflect a serious lapse in judgment and, further, "evidence[ ] a willingness to advance [his] own interests at the expense of others" (*Matter of Jeker v Weiss*, 77 AD3d 1069, 1073 [2010]), thereby demonstrating the requisite change in circumstances. Additionally, in view of—among other relevant considerations—the father's estrangement from his children at the time of the hearing and the fact that he was, at that point, an untreated sex offender, we cannot say that Family Court's decision to award sole legal and physical custody of Ashley and Andrew[1] to the mother lacked a sound and substantial basis in the record.

As to the visitation issue, Family Court awarded the father supervised visitation at such times as he, the mother and one of the seven approved supervisors could agree, but no less than two hours biweekly.[2] "The determination of whether visitation should be supervised is a matter left to Family Court's sound discretion and it will not be disturbed as long as there is a sound and substantial basis in the record to support it" (*Matter of Beard v Bailor*, 84 AD3d 1429, 1430 [2011] [internal quotation marks and citations omitted]; *accord Matter of Vasquez v Barfield*, 81 AD3d 1398, 1398 [2011]; *Matter of Kaleb U. [Heather V.—Ryan U.]*, 77 AD3d 1097, 1100 [2010]). Although the father testified that he accepted responsibility for his behavior and had plans to enter a recommended treatment program, given that

---

1. Christopher turned 18 during the pendency of this proceeding and, as such, Family Court no longer had jurisdiction to determine custody of him (*see Matter of Larock v Larock*, 36 AD3d 1177, 1177-1178 [2007]).

2. Following the fact-finding hearing, Family Court asked the parties to submit a list of potential supervisors. The father did not tender the requested list—apparently due to an interim change in counsel. Upon receiving a letter from the father objecting to the supervisors approved by the court, Family Court revisited this issue, allowed the father to offer his own list of potential candidates, adduced additional proof thereon and thereafter issued the modified order that is the subject of this appeal, which includes—as approved supervisors—some of the individuals proposed by the father.

he had yet to enter treatment at the time of the hearing and in view of the documented impact that his behavior had upon his children, Family Court's decision to award supervised visitation represented a sound exercise of its discretion.

Finally, we find no merit to the father's claim of ineffective assistance of counsel. "A finding of ineffective assistance of counsel requires that the proponent demonstrate that he [or she] was deprived of reasonably competent and, thus, meaningful representation" (*Matter of Rosi v Moon*, 84 AD3d 1445, 1447 [2011] [internal quotation marks and citation omitted]; *see Matter of Arieda v Arieda-Walek*, 74 AD3d 1432, 1434 [2010]). Here, counsel actively participated in the fact-finding hearing by, among other things, effectively cross-examining the mother's witnesses and making appropriate and often successful objections (*see Matter of Bunger v Barry*, 88 AD3d 1082, 1083 [2011]; *Matter of Rosi v Moon*, 84 AD3d at 1447). To the extent that the father finds fault with counsel's closing, which focused primarily upon securing some form of visitation for the father, counsel's decision in this regard may—given the nature of the father's offense—be viewed as a legitimate trial tactic (*see Matter of Elizabeth HH. v Richard II.*, 75 AD3d 670, 670-671 [2010]; *Matter of Hurlburt v Behr*, 70 AD3d 1266, 1267-1268 [2010], *lv dismissed* 15 NY3d 943 [2010]). The father's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.

Lahtinen, J.P., Spain, Stein and Garry, JJ., concur. Ordered that the modified order is affirmed, without costs.