Garry, J.
Respondents, Sheldon Roscoe Sr. (hereinafter the father) and Mary Gee (hereinafter the mother), are the parents of a child (born in 1999). For the first eight months of her life, the child resided with respondents. Thereafter, and for approximately one year, she resided with petitioner, her maternal aunt, in the City of Schenectady, Schenectady County. The father briefly regained physical custody in 2001, but later that year the child was returned to petitioner following the father’s arrest on drug charges; he was thereafter incarcerated for six years. The mother obtained sole custody in September 2003 pursuant to a court-ordered stipulation with petitioner; six months later, however, these two parties entered into a second court-ordered stipulation granting sole custody to petitioner.[1] In January 2010, petitioner and the father — who had been released from prison several years previously — stipulated to an order that provided them with joint legal custody and granted physical custody to the father and visitation to petitioner. In May 2010, petitioner *1054 commenced this modification proceeding seeking physical custody.[2] A fact-finding hearing ensued and, after the presentation of petitioner’s evidence and upon the father’s oral motion, Family Court dismissed the petition on the ground that petitioner had failed to establish a change in circumstances. Petitioner and the attorney for the child appeal.
As petitioner and the attorney for the child contend, Family Court erred in dismissing the petition without making a threshold determination whether extraordinary circumstances existed to warrant placement of the child with a nonparent. A biological parent’s claim to custody of his or her child is superior to that of a nonparent “in the absence of surrender, abandonment, persistent neglect, unfitness, disruption of custody over an extended period of time or other extraordinary circumstances” (Matter of Gray v Chambers, 222 AD2d 753, 753 [1995], lv denied 87 NY2d 811 [1996]; accord Matter of Bevins v Witherbee, 20 AD3d 718, 719 [2005]). The court must find that the nonparent has met the burden of showing such extraordinary circumstances before considering the child’s best interests, and this burden is not satisfied solely by the existence of prior consent orders in the nonparent’s favor (see Matter of Loukopoulos v Loukopoulos, 68 AD3d 1470, 1471 [2009]). In the absence of a prior judicial determination of extraordinary circumstances, Family Court was required to consider this issue before proceeding (see Matter of Ramos v Ramos, 75 AD3d 1008, 1009-1010 [2010]; Matter of McArdle v McArdle, 1 AD3d 822, 823 [2003]; Matter of Moore v St. Onge, 307 AD2d 421, 422 [2003]).
Although this Court is empowered to conduct an independent review to determine whether extraordinary circumstances exist (see Matter of Ramos v Ramos, 75 AD3d at 1010), the record here is not adequately developed to permit such a determination. The extraordinary circumstances analysis is based on the combined effect of such factors as the length of the child’s residence with the nonparent, the quality of the child’s relationships with the nonparent and biological parent, and the biological parent’s neglect or abdication of responsibility, if any (see e.g. Matter of Pettaway v Savage, 87 AD3d 796, 797-798 [2011], lv denied 18 NY3d 801 [2011]; Matter of Lori MM. v Amanda NN., 75 AD3d 774, 775 [2010]; Matter of Bevins v Witherbee, 20 AD3d at 719). Family Court limited or precluded petitioner’s efforts to present proof on these and other pertinent issues, and also restricted the participation of the attorney for the child. Although the attorney for the child was allowed to cross-examine *1055 witnesses, she was precluded from being heard on certain issues, including the father’s motion to dismiss the petition, and the court refused to permit her to present witness testimony and medical records that she had subpoenaed. These restrictions prevented the attorney for the child from effectively representing her client and contributed to creating an inadequate record. Accordingly, the matter must be remitted for a new hearing to determine whether extraordinary circumstances exist and, if so, what custodial placement is in the child’s best interests (see Matter of Figueroa v Lopez, 48 AD3d 906, 907 [2008]; see also Matter of Jamie EE., 249 AD2d 603, 605-606 [1998]).
Finally, as a Lincoln hearing is not mandatory, we do not find further error in Family Court’s refusal to conduct one here (see Matter of DeRuzzio v Ruggles, 88 AD3d 1091, 1091-1092 [2011]; Matter of Walker v Tallman, 256 AD2d 1021, 1022 [1998], lv denied 93 NY2d 804 [1999]). However, in so holding, we must note the confusion evident in the record as to whether the court’s in camera interview with the child — which was conducted shortly after the petition was filed, before issue had been joined and approximately eight months before the commencement of the fact-finding hearing — constituted a Lincoln hearing. It did not as “[t]he purpose of a Lincoln hearing in a custody proceeding is to corroborate information acquired through testimonial or documentary evidence adduced during the fact-finding hearing” (Matter of Spencer v Spencer, 85 AD3d 1244, 1245 [2011] [emphasis added; internal quotation marks and citation omitted]; see Matter of Lincoln v Lincoln, 24 NY2d 270, 273 [1969]; Matter of Giovanni v Hall, 86 AD3d 676, 677 n [2011]).
Mercure, J.E, Rose, Spain and Malone Jr., JJ., concur. Ordered that the order is reversed, on the law, without costs, motion denied, and matter remitted to the Family Court of Schenectady County for further proceedings not inconsistent with this Court’s decision.

. It is unclear from the record whether the custodial arrangements prior to September 2003 were the result of court proceedings or informal agreements among the parties.

. The mother neither appeared in Family Court nor participated in this appeal.