Stein, J.
Appeal from an order of the Family Court of Chemung County (Buckley, J.), entered August 1, 2012, which, among other things, granted petitioner’s application, in a proceeding pursuant to Family Ct Act article 6, to modify two prior orders of custody.
Respondents are the parents of two daughters (born in 1999 and 1995). As a result of two prior orders, respondent Diana L. Messina (hereinafter the mother) had physical and legal custody of the younger child. With respect to the older child, the mother and petitioner — the children’s maternal aunt — shared legal custody, petitioner had physical custody and the mother had visitation. In September 2011, petitioner commenced the first of *1258 these proceedings seeking to modify the two prior custody orders to obtain sole physical and legal custody of both children. She alleged, among other things, that the mother’s health had seriously deteriorated, that the mother had been hospitalized at least six times, that the mother’s condition affected her ability to parent the children and that the younger child had untreated dental, behavioral and educational issues that jeopardized her well-being. Family Court issued a temporary order granting petitioner physical custody of the younger child, with visitation to the mother. The mother subsequently filed, among other things, a violation petition alleging that petitioner had denied her visitation.[1] After a trial and Lincoln hearings, Family Court awarded petitioner sole legal and physical custody of the children, with visitation to respondents (the mother’s visitation to be supervised) and dismissed the mother’s violation petition. The mother now appeals.[2]
Initially, we agree with the attorney for the child that Family Court erred by failing to address the threshold question of whether petitioner, as a nonparent, met her heavy burden of establishing extraordinary circumstances to overcome the mother’s superior right to custody (see Matter of Bennett v Jeffreys, 40 NY2d 543, 544 [1976]; Matter of Aida B. v Alfredo C., 114 AD3d 1046, 1047 [2014]; Matter of Ettari v Peart, 110 AD3d 1256, 1256-1257 [2013]; Matter of Mildred PP. v Samantha QQ., 110 AD3d 1160, 1161 [2013]; Matter of Rush v Roscoe, 99 AD3d 1053, 1054 [2012]). A determination of whether extraordinary circumstances exist takes into consideration such factors as the length of time the child has resided with the nonparent, the quality of the child’s relationships with the parent and the nonparent, the prior disruption of the parent’s custody, separation from siblings and any neglect or abdication of responsibilities by the parent (see Matter of Rush v Roscoe, 99 AD3d at 1054; Matter of Pettaway v Savage, 87 AD3d 796, 797-798 [2011], lv denied 18 NY3d 801 [2011]).
Notwithstanding Family Court’s failure to make the threshold determination regarding extraordinary circumstances, we may independently review the record to make such a determi *1259 nation where, as here, the record has been adequately developed (see Matter of Ramos v Ramos, 75 AD3d 1008, 1010 [2010]; compare Matter of Rush v Roscoe, 99 AD3d at 1054). Based upon that review, we conclude that petitioner met her burden of establishing extraordinary circumstances. Petitioner testified that the older child had lived with her for approximately four years. The younger child had lived with petitioner for about one year, returned to the mother’s home and then resumed living with petitioner. According to petitioner, and as partially corroborated by the mother, the mother’s health issues significantly limited her ability to care for the children. The evidence at trial established that the mother, who has substantial pulmonary issues and requires the aid of oxygen, excessively and inappropriately depended upon the children to assist her with personal and health needs, as well as housekeeping duties. The mother even required the younger child to sleep near her because she was afraid she would stop breathing while sleeping. Additionally, the mother’s health issues hindered her ability to supervise the younger child, who had behavior issues and was getting into trouble at school while she was living with the mother. During various hospitalizations, the mother left the younger child with neighbors and/or relatives, some of whom were of questionable reliability.
It is abundantly clear that the mother was unable to both provide the younger child with a structured environment and to properly care for her; instead, the mother relied upon the child to take care of her. Further, when the younger child was residing with petitioner, the mother consistently pressured her to return to her home — claiming, among other thing, that she needed her home because she was dying — which was upsetting to the child. Multiple witnesses also testified to the unsanitary living conditions in the mother’s trailer, including several occasions when it was flea infested. When the younger child came to live with petitioner, her clothing was ill-fitting and she had significant untreated dental issues. Finally, inasmuch as the older child had been living with petitioner for many years, placing the younger child in petitioner’s care allowed the siblings to reside together.
Considering the cumulative effect of the foregoing evidence, together with the information gleaned from the Lincoln hearing, it is evident that the mother neglected the younger child and/or generally abdicated her parental responsibilities by, among other things, placing the child with questionable caretakers while the mother was hospitalized, failing to provide adequate living conditions and proper dental care, requiring the *1260 child to care for the mother’s health needs and repeatedly subjecting the child to stressful confrontations regarding her custody. Accordingly, inasmuch as there is credible evidence that the mother was unable to adequately care for the younger child and that such inability had a profound effect on the child’s welfare, we find that petitioner met her initial burden of establishing extraordinary circumstances (see Matter of Loukopoulos v Loukopoulos, 68 AD3d 1470, 1472 [2009]; Matter of Ciampa v Ciampa, 301 AD2d 876, 878 [2003]; Matter of Scott FF. v Laurene EE., 278 AD2d 539, 540 [2000]). Based on this evidence and additional evidence concerning the child’s relationship with petitioner, the care provided to her by petitioner, and the child’s wishes, there is also a sound and substantial basis in the record supporting Family Court’s best interests analysis and the award of custody to petitioner (see generally Matter of Golden v Golden, 91 AD3d 1042, 1044-1045 [2012]), which we decline to disturb.
We reject the mother’s claim that a variety of alleged errors by her counsel deprived her of meaningful representation. Specifically, we find nothing improper about the order of the presentation of proof at trial and there is no evidence that the order was not the result of a sound strategic decision. Nor was the mother’s counsel ineffective for failing to make a motion to dismiss, as petitioner established a prima facie case and otherwise satisfied her burden of proof. While we agree that Family Court at times placed excessive reliance upon the attorney for the child during the course of the proceedings in various respects, there is no evidence that the court’s custody determination was, in any way, affected thereby.[3] Moreover, throughout the pretrial proceedings, counsel strenuously advocated for the child’s return to the mother and, at trial, presented witnesses, made appropriate objections and vigorously cross-examined witnesses. Thus, notwithstanding the claimed deficiencies, we are satisfied that, when viewed in its entirety, the representation afforded the mother was both competent and meaningful (see Matter of Heater v Peppin, 92 AD3d 1169, 1169 [2012]; Matter of Knight v Knight, 92 AD3d 1090, 1093 [2012]; Matter of Hurlburt v Behr, 70 AD3d 1266, 1267 [2010], lv dismissed 15 NY3d 943 [2010]).
*1261 To the extent not specifically addressed, the mother’s remaining contentions have been considered and are unpersuasive.
Lahtinen, J.E, Garry and Rose, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as directed that the attorney for the child have continuing jurisdiction to mediate issues between the parties, and, as so modified, affirmed.

. The mother also filed an enforcement petition and several modification petitions seeking custody. Additionally, the father filed a custody petition. However, at trial, the father testified that he was supportive of petitioner having custody of the children and only sought visitation with the children.

. Inasmuch as the older child has reached the age of majority, Family Court no longer has jurisdiction over any issues regarding her custody (see Matter of Knight v Knight, 92 AD3d 1090, 1092 n 1 [2012]). Thus, the mother’s appeal is limited to challenging that part of the order that granted petitioner custody of the younger child.

. However, we agree with the mother that Family Court, in its order, impermissibly delegated its authority to address future issues by directing that the attorney for the child have continuing jurisdiction to mediate such issues (see Matter of Alazaya I.B. [Stormie A.G.], 109 AD3d 1147 [2013], lv denied 22 NY3d 857 [2013]; Matter of Juliane M., 23 AD3d 473 [2005]). Such provision must be vacated.