OPINION OF THE COURT
Richard A. Bollinger, J.
In this application, the plaintiff seeks an order to recuse this court from presiding over this matter because the court met in camera with the couple’s children before trial. The plaintiff wife also seeks a copy of the transcript of the in camera interview. The husband opposes the application, arguing that there is no evidence of actual bias by the court to justify a recusal order, and that the court was within its discretion to hold the interview and should not release a transcript of it. The Attorney for the Children, who attended the in camera interview, also opposes the recusal application and release of the transcript.
In July 2013, the court met with all counsel in the mandatory pretrial conference in this case. Amid attorney complaints of strife between the parents spilling over to the children, the court cautioned the parties to “get the children out of the middle” and advised both parents to seek the assistance of the ACT Program, a parental education program made available through the Monroe County Bar Association. The court also appointed an Attorney for the Children (AFC). A month later, the AFC reported that his clients concurred with a temporary *451 residence/visitation schedule that had been discussed at the pretrial conference. When a temporary order surfaced, the husband’s counsel objected. In a letter to the court, he argued that a proposed order of protection, included in the draft order, was based on a disputed series of facts involving transfer of personalty when the husband moved out of the marital residence months before. The court responded that in the absence of motion practice, the court would not continue the order of protection.
When the court later asked for an update from all counsel, the court was informed that there were “problems with kids” and the court asked the AFC to contact his clients. After a telephone conference with counsel, the court, in a sharply worded email, informed counsel to tell their clients: “Stop talking to the children about this case, where they should live or who they spend more time with.” The court added: “I strongly urge both parents to stop talking to their children about this case. I also ask the parents to refrain [from] any confrontations or obviously inappropriate behavior in front of the boys. Keep them out of this dispute. Everyone is warned.”
On November 20, 2013, the court held a conference and heard allegations from both parents’ counsel that the parents were coaching their children on their preferences given to the AFC. The question was raised as to whether the AFC, in his advocacy before the court, was accurately summarizing the children’s preferences. To be satisfied that the AFC’s advocacy was consonant with the children’s view, the court told all parties that the court would hold a “Lincoln hearing.” (Matter of Lincoln v Lincoln, 24 NY2d 270 [1969].) The court asked each attorney to offer questions to be posed to the children. The court scheduled the meeting with the children. At that time, neither attorney objected to the court meeting with the children. In fact, all three attorneys supported the interview.
The day before the meeting, the wife’s counsel advised the court that she had signed a consent to change attorneys and asked that the hearing be rescheduled “to give the new attorney time to get familiar with this case and submit their own questions to the court.” The same day, the husband’s attorney submitted questions, as requested by the court, and claimed the last-minute change of counsel was a “dilatory tactic.” The wife’s then-current counsel responded, reiterating a request for an adjournment:
“I cannot let [the wife] be steam rolled while new *452 counsel is getting up to speed with the case. If the court insists upon seeing the boys tomorrow, I would then respectfully request that the court meet with them again once [the wife’s] new attorney has had the opportunity to review the questions, he or she may have additional or new questions for the boys.”
The court responded:
“I cannot see how the Lincoln hearing is dependent on a party’s change of counsel. I am unwilling, given the nature of the accusations in this case, to postpone the Lincoln hearing. It will occur as planned and [the wife’s] right to request a second hearing, when her counsel’s questions can be posed, is preserved.”
At that point, the successor counsel weighed in on the morning the in camera interview was scheduled, noting: “I have been substituted in ... I ask that the Lincoln hearing not be held. In fact, case law provides that it is reversible error for a Lincoln hearing to occur before a trial has been concluded.” The new attorney also suggested that she did not learn about the in camera meeting until the morning it was scheduled. However, at the time of the email exchange, the new attorney had yet to be formally substituted as counsel: the substitution of counsel was not filed in the county clerk’s office until two days after the in camera interview with the court.
The court proceeded with the in camera interview and later advised the parties: “However, based on the interview, I am confident that the preference advocated by the AFC accurately reflects the wishes of these two young men. The court advised new counsel that her objection to the in camera was preserved.”
Six weeks after the in camera interview, the wife moved for the relief requested in this application.
Initially, this court notes that it repeatedly referred to the confidential closed-door interview with the two sons as a “Lincoln hearing.” (Matter of Lincoln v Lincoln, 24 NY2d 270, 273 [1969].) This description of the in camera meeting with two children, prior to trial, was inartful by the court, although this court is not the only New York trial judge somewhat confused by the widespread use of the phrase “Lincoln hearing” to describe confidential in camera interviews with children in contested custody matters. (See Matter of Rush v Roscoe, 99 AD3d 1053 [3d Dept 2012].) In that case, the Court noted that there was confusion over whether an in camera interview with *453 a child, conducted well before a trial, was a Lincoln hearing. The Court held it was not a Lincoln hearing, but instead a permissive in camera interview with the child. The “purpose of a Lincoln hearing in a custody proceeding is to corroborate information acquired through testimonial or documentary evidence adduced during the fact-finding hearing” (Matter of Spencer v Spencer, 85 AD3d 1244, 1245 [3d Dept 2011] [a true Lincoln hearing is held after, or during, a fact-finding hearing and adding there is no authority or legitimate purpose for courts to conduct such interviews in place of fact-finding hearings]). In short, the lesson from these cases is simple: the court may meet in camera with a child, in advance of a hearing, but the court, in deciding any question involving the children, must hold a fact-finding hearing and thereafter seek to corroborate any trial testimony by examining the children in a Lincoln hearing setting. This court has not held a fact-finding hearing in this case but barring resolution of the ongoing disputes, it will. This court has made no decision based on the interview with the children except that the court was satisfied, based on the children’s comments, that their attorney was accurately advocating their interests.
In addition, as further case law suggests, the court should confer with the children if either counsel suggests — as occurred in this case — that the children’s court-appointed attorney may not be accurately advocating for the children’s preference in both temporary and permanent orders involving residence and visitation. (Matter of Jessica B. v Robert B., 104 AD3d 1077 [3d Dept 2013] [noting that an in camera interview was justified because there was strong support for the claim that the child’s wishes were not in fact accurately or adequately conveyed by her trial counsel].) In addition, this court notes that the court preserved the right of the wife’s attorney to seek an additional in camera interview with the children and request a Lincoln hearing after the proof at the custody hearing.
Based on these facts and law, this court’s in camera meeting with the children did not violate any precepts of the Lincoln hearing doctrine or any other rule or statute and simply exercised its discretion to meet with the children to confirm their then-existing preferences in this contested custody matter.
In response to the request to release the transcript of the discussion with the children, this court notes that it has not, in writing this opinion, reviewed the transcript. However, appellate courts have cautioned trial judges not to divulge comments *454 made during in camera interviews with children in custody proceedings and instead urged courts to protect the children’s right to confidentiality by avoiding disclosure. (Matter of Spencer v Spencer, 85 AD3d 1244 [3d Dept 2011]; Matter of Verry v Verry, 63 AD3d 1228, 1229 [3d Dept 2009] [what transpires at a Lincoln hearing as a general rule is confidential and “the child’s right to confidentiality should remain paramount absent a direction to the contrary”]; Matter of Carter v Work, 100 AD3d 1557 [4th Dept 2012] [we agree with the AFC that the court improperly disclosed the child’s statement at the Lincoln hearing].) Given the weight of these authorities contrary to the wife’s position, the court declines to release the transcript to either party.
Finally, in considering the wife’s request for recusal by this court, the court notes that the wife argues that she was denied due process when the court declined to adjourn the in camera interview and the court is now potentially tainted by a bias because the court was “certainly effected by the comments and statements of the children.” In further support of the release of the transcript, she argues that the court has had access to information from the children not subject to cross-examination. First, this court notes that an in camera hearing is, by its terms, a conversation with the children in which they are questioned by the court and not subject to cross-examination by either counsel. The parents’ attorneys do not attend: only the children’s attorney attends. Second, there is no authority cited to or found by the court for any proposition that an in camera interview with the children, in advance of a fact-finding hearing and when a second interview — or a Lincoln hearing to corroborate trial testimony — is available and may be requested, somehow violates the vague assertion of “due process.”
In considering the request for recusal, this court is cognizant that an impartial decision maker is a core guarantee of due process. (Matter of 1616 Second Ave. Rest, v New York State Liq. Auth., 75 NY2d 158, 161 [1990].) This court takes note of its obligation to be faithful to the law and maintain professional competence in it. (Rules Governing Judicial Conduct [22 NYCRR] § 100.3 [B] [4] [a judge shall perform judicial duties without bias or prejudice against or in favor of any person].) This court is well aware that the Rules Governing Judicial Conduct suggest recusal if the judge has personal knowledge of disputed evidentiary facts concerning the proceeding and prejudges it. (22 NYCRR 100.3 [E] [1] [a] [ii]; Matter of 1616 *455 Second Ave. Rest. v New York State Liq. Auth., 75 NY2d at 162 [recusal appropriate on ground of prejudgment if “ ‘a disinterested observer may conclude that (the judge) has in some measure adjudged the facts as well as the law of a particular case in advance of hearing it’ ”]; Rochester Community Individual Practice Assn. v Excellus Health Plan, 305 AD2d 1007, 1008 [4th Dept 2003].)
However, there is also no allegation of any actual judicial bias under Judiciary Law § 14. (Saccone v Elm Hill Plaza, 5 AD3d 1028 [4th Dept 2004] [plaintiff failed to demonstrate a basis for mandatory disqualification or recusal and made no showing of actual bias on the part of the court].) Hence, the court is the sole arbiter of the need for recusal and its decision is a matter of discretion and personal conscience. (Chusid v Silvera, 110 AD3d 662 [2d Dept 2013]; Galanti v Kraus, 98 AD3d 559 [2d Dept 2012].) There is no proof of any bias or prejudice before this court. (Matter of Moore v Palmatier, 115 AD3d 1069 [3d Dept 2014] [in absence of statutory disqualification or of personal bias, Family Court did not abuse its discretion in denying the father’s recusal motion]; Guerrera v Tooker, 43 Misc 3d 1212[A], 2014 NY Slip Op 50586[U], *3 [Sup Ct, Suffolk County 2014] [where the party seeking recusal fails to demonstrate that any determinations in the case were the result of bias, the court providently exercises its discretion in declining to recuse itself from the case].) In D.I. v S.I. (240 NYLJ 59, 2008 NY Misc LEXIS 6033, *3 [Sup Ct, Westchester County, Sept. 23, 2008]), a litigant sought to disqualify a judge after he had ruled against the litigant and the court noted:
“It is ‘[o]nly when alleged bias and prejudice arise from an extrajudicial source and result in an opinion on the merits based on the outside source is disqualification warranted .... In the absence of a violation of express statutory provisions, bias or prejudice or unworthy motive on the part of a Judge, unconnected with an interest in the controversy, will not be a cause for disqualification, unless shown to affect the result’ .... Here, not only does the Court not harbor a bias or prejudice or unworthy motive as charged by defendant, defendant has failed to show how any such allegation, even if true, affected the Court’s determination.”
The court’s determination to hold the in camera interview, even over the objection and request for delay by the wife’s successor counsel, is not evidence of bias and no fact obtained in the *456 interview will taint the court’s ability to seek the truth in this disputed custody matter. This court will not decide any of the issues related to the children until after a fact-finding hearing and, if requested, a Lincoln hearing — to obtain corroboration of trial testimony — with the children. Because there is an abundance of opportunities for proof in this case at this stage— further interviews with the children, a trial and a posttrial Lincoln hearing — and no evidence or even an allegation of any actual bias, the court denies the request for recusal.