*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  October 20, 2016                520703
_____

In the Matter of CHRISTINE TT.,
                Appellant,
        v                            MEMORANDUM AND ORDER

DINO UU.,
                Respondent.
_____

Calendar Date:   September 8, 2016

Before:  Garry, J.P., Egan Jr., Lynch, Rose and Aarons, JJ.

_____

        William V. O'Leary, Albany, for appellant.

        Mark A. Schaeber, Liverpool, for respondent.

_____

Lynch, J.

        Appeal from an order of the Family Court of Cortland County (Campbell, J.), entered March 12, 2015, which partially dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody and visitation.

        Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of a daughter (born in 2003).  In September 2012, Family Court granted sole custody to the father due to the mother's abuse of alcohol.[1]  The mother was granted limited visitation to be supervised by the maternal

_____

        [1]  The proceedings before Family Court were combined with a separate proceeding involving the mother's younger child, who has a different father (Matter of Christine TT. v Gary VV., ___ AD3d ___ [decided herewith]).

grandmother each Wednesday from 4:00 p.m. to 6:00 p.m. at a community resource center. Importantly, the mother was directed to complete a long-term residential substance abuse rehabilitation program with a mental health component. Having completed both a residential treatment program from August 2012 through March 2013 and a weekly 20-hour outpatient program in February 2014, the mother filed a petition to modify the custody order in June 2014. An amended petition was filed in September 2014, seeking an award of joint custody and regular unsupervised visitation with the child.

At an initial appearance on September 24, 2014, Family Court scheduled a fact-finding hearing to commence on January 7, 2015. The court also granted the attorney for the child's request for a Lincoln hearing, explaining to the father, who was not represented by counsel, that a Lincoln hearing "allows [the child] and her lawyer to talk to the Judge without everybody else." The court invited the parties to submit "questions or topics that you think might be appropriate" prior to the hearing, which was scheduled for December 16, 2014. No objections were raised, and neither party submitted any requests to the court. The Lincoln hearing was held as scheduled.

Following the fact-finding hearing, Family Court found a change in circumstances, given the mother's rehabilitation efforts and extended period of sobriety, as well as the closure of the resource center and the maternal grandmother's inability to provide supervision. Turning to the best interests of the child, Family Court continued the award of sole custody and placement with the father – a determination not challenged on the appeal. In view of the undisputed strained relationship between the mother and the child, Family Court directed the father to enroll the child in counseling "with the goal of reunification with [the mother]," and further directed the child to attend "at least two joint sessions with [the mother] and the counselor." The court provided that further counseling would be at the father's discretion. If successful, the court authorized visitation as the parties mutually agreed, taking into account the advice of the counselor. Failing an agreement, either party could petition the court "for the limited purpose of determining

an appropriate visitation schedule."  The mother appeals.[2]

A parent seeking to modify an existing custody order must "demonstrate[] a change in circumstances that warrants an inquiry into the best interests of the child" (Matter of Schlegel v Kropf, 132 AD3d 1181, 1182 [2015]).  There is no dispute here that Family Court properly determined that the mother established a change in circumstances.  As such, our focus is on the best interests of the child.  Visitation with a noncustodial parent is presumed to be in the best interests of a child, but not where, as here, that parent's behavior has been detrimental to the child (see Matter of Kadio v Volino, 126 AD3d 1253, 1254 [2015]).  During her testimony, the mother candidly acknowledged that her relationship with the child was "[n]on-existent.  . . . I don't know my daughter much anymore."  Her request to initiate counseling was to "rebuild my relationship" with the child, who she conceded did not want to see her.

During her extended rehabilitation, both inpatient and outpatient, the mother did not participate in any Wednesday visitations and actually only visited with the child once during the December 2013 holiday season.  Her efforts to communicate with the child in writing were limited, by her own admission.  She also had limited telephone contact with the child, but not for lack of trying.  The mother testified that she was allowed one weekly phone call while an inpatient and that she tried to call each week with limited success.  It is troubling that by his own admission, the father routinely would neither answer nor return the calls, and he conceded that his voicemail was usually full and that he did not respond to the mother's text messages — effectively frustrating the mother's ability to verbally communicate with the child (see Matter of Chris X. v Jeanette Y., 124 AD3d 1013, 1016 [2015]; Matter of Brown v Erbstoesser, 85 AD3d 1497, 1500 [2011]).  A defining moment in the mother-child relationship occurred in March 2014 when the child telephoned the mother for the first time to initiate a visit.  During that call, the mother explained that she was away in the City of Watertown, Jefferson County visiting a boyfriend who she described as "very

---

[2]  The father has not filed a brief on appeal.

special" and would be unable to see her for a week. The child has not spoken to her since that call, which the mother concedes made the child feel rejected.

Given the above, we find a sound and substantial basis in this record for Family Court's decision to modify the prior visitation order by limiting the mother's visitation to a counseling format – which the mother acknowledged was the best she could hope for given her strained relationship with the child (see Matter of Klee v Schill, 95 AD3d 1599, 1601 [2012]; Matter of Braswell v Braswell, 80 AD3d 827, 830 [2011]). That said, by effectively making further visitation contingent on the success of counseling and the father's approval, Family Court improperly delegated its authority to structure a visitation schedule (see Matter of Taylor v Jackson, 95 AD3d 1604, 1605 [2012]; Matter of William BB. v Susan DD., 31 AD3d 907, 908 [2006]; compare Matter of Klee v Schill, 95 AD3d at 1600). We conclude that the matter must be remitted to Family Court for a determination as to whether a resumption of visitation with the mother would be in the child's best interests and, if so, under what conditions (see Matter of Taylor v Jackson, 95 AD3d at 1605; Matter of Brown v Erbstoesser, 85 AD3d at 1500).

Finally, the mother asserts that Family Court improperly conducted the Lincoln hearing prior to the commencement of the fact-finding hearing and, thus, had a preconceived notion of the child's circumstances without the benefit of having heard all the evidence. First, the mother failed to preserve this argument through an appropriate objection (see Matter of Verry v Verry, 63 AD3d 1228, 1229 n 2 [2009], lv denied 13 NY3d 707 [2009]). In any event, as recounted above, the mother fully acknowledged that her relationship with the child was strained due to the mother's own conduct – a concession that obviates any suggestion that Family Court was misdirected by the discussions with the child. As for the timing of the Lincoln hearing, we are mindful that a Lincoln hearing generally should be held at a point either during or at the conclusion of a fact-finding hearing, given that a recognized purpose of a Lincoln hearing "is to corroborate information acquired through testimonial or documentary evidence adduced during the fact-finding hearing" (Matter of Spencer v Spencer, 85 AD3d 1244, 1245 [2011] [internal quotation marks and

citation omitted]; see Matter of Rush v Roscoe, 99 AD3d 1053, 1055 [2012]). Corroboration, however, is not the only purpose of a Lincoln hearing. Indeed, the fundamental purpose of a Lincoln hearing is to ascertain a child's preferences and concerns (see Matter of Lincoln v Lincoln, 24 NY2d 270, 272 [1969]; Matter of Gonzalez v Hunter, 137 AD3d 1339, 1342-1343 [2016], lv dismissed and denied 27 NY3d 1061 [2016]; Matter of Battin v Battin, 130 AD3d 1265, 1265-1266 [2015]; Matter of Julie E. v David E., 124 AD3d 934, 937 [2015]). Here, there was very little contact between the child and the mother for several years prior to the commencement of the fact-finding hearing and, thus, a limited need to corroborate any disputed events. Moreover, as observed by the Court of Appeals in Matter of Lincoln v Lincoln (24 NY2d at 273), we are confident that trial judges recognize that any new information derived during a Lincoln hearing should not be considered "without in some way checking on its accuracy during the course of the open hearing" (id.). Given the mother's concessions, no such concern arises in this case. As such, were this issue before us we would perceive no error with the timing of the Lincoln hearing.

Garry, J.P., Egan Jr., Rose and Aarons, JJ., concur.

ORDERED that the order is modified, on the law, without costs, by deleting so much of the third and fourth decretal paragraphs thereof as conditioned continued counseling and visitation on the discretion of the child and respondent; matter remitted to the Family Court of Cortland County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court