Matter of Nevaeh MM. (Sheri MM.--Charles MM.) (2018 NY Slip Op 01225)





Matter of Nevaeh MM. (Sheri MM.--Charles MM.)


2018 NY Slip Op 01225


Decided on February 22, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 22, 2018

523315

[*1]In the Matter of NEVAEH MM., Alleged to be a Neglected Child. CHEMUNG COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; SHERI MM., Appellant, and CHARLES MM., Respondent, et al., Respondent. (Proceeding No. 1.)
In the Matter of AUDREY NN., Respondent, 
ALLAN OO. et al., Respondents, et al., Respondent. (Proceeding No. 2.) (And Another Related Proceeding.)

Calendar Date: January 10, 2018

Before: McCarthy, J.P., Devine, Aarons, Rumsey and Pritzker, JJ.


Andrea J. Mooney, Ithaca, for appellant.
L. Crary Myers, Chemung County Department of Social Services, Elmira, for Chemung County Department of Social Services, respondent.
Michelle I. Rosien, Philmont, for Charles MM., respondent.
Sarah E. Cowen, Sidney, for Audrey NN., respondent.
Pamela Bleiwas, Ithaca, attorney for the child.


Rumsey, J.

MEMORANDUM AND ORDER
Appeal from an order of the Family Court of Chemung County (Rich Jr., J.), entered May 24, 2016, which, among other things, granted petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 6, for custody of the subject child.
Respondent Britni MM. (hereinafter the mother) and respondent Allan OO. (hereinafter the father) are the parents of a child (born in 2014). Respondent Sheri MM. (hereinafter the grandmother), the child's maternal grandmother, has been the child's custodian primarily responsible for her care since the child's birth, and respondent Charles MM. (hereinafter the grandfather) is the child's maternal grandfather. In August 2015, petitioner Chemung County Department of Social Services (hereinafter DSS) filed a neglect petition (proceeding No. 1) against the grandmother, the grandfather and the mother. The child was removed from the grandmother's care and placed in foster care, where she remained while the hearing was held. In January 2016, petitioner Audrey NN. (hereinafter the aunt) commenced a Family Ct Act article 6 petition (proceeding No. 2) seeking custody of the child. At a February 2016 appearance, the mother, the grandmother and the grandfather consented to a finding of neglect, but the grandmother did not consent to permanent custody provisions or waive a dispositional hearing. After a combined hearing that concluded in April 2016, Family Court granted the aunt's petition and awarded her custody of the child, with visitation awarded to the father, the mother and the grandmother. The court further held that its custody determination constituted its disposition of the neglect proceeding [FN1]. The grandmother appeals.
Where both a custody proceeding and a neglect proceeding are pending, Family Court may conduct a joint hearing on the custody petition and the dispositional hearing on the neglect petition, and the custody proceeding must be determined in accordance with Family Ct Act article 6 (see Family Ct Act § 651 [c-1]). Inasmuch as the father's petition for custody was pending, the court was required to determine that extraordinary circumstances existed to overcome his superior right to custody before it could conduct a best interests analysis or make an award of custody to a nonparent (see Matter of Roth v Messina, 116 AD3d 1257, 1258 [2014]). Here, Family Court did not explicitly make a finding of extraordinary circumstances relative to the father [FN2]. However, it made factual findings regarding the father that were relevant [*2]to both the threshold determination of extraordinary circumstances and to the best interests analysis that are sufficient to support a finding of extraordinary circumstances with respect to the father (see Matter of Whetsell v Braden, 154 AD3d 1212, 1214 [2017]; Matter of Curless v McLarney, 125 AD3d 1193, 1195-1196 [2015]; see also Matter of Roth v Messina, 116 AD3d at 1258). In that regard, "[a] parent's claim to custody of his or her children is superior to that of all others absent a showing of surrender, abandonment, persistent neglect, unfitness, an extended disruption of custody or other like extraordinary circumstances" (Matter of Durgala v Batrony, 154 AD3d 1115, 1117 [2017] [internal quotation marks and citation omitted]). "The nonparent bears the burden of demonstrating the existence of such extraordinary circumstances, which may include proof that the parent has neglected to maintain substantial, repeated and continuous contact with [a child] or to make plans for [the child's] future" (Matter of Sweeney v Sweeney, 127 AD3d 1259, 1260 [2015] [internal quotation marks and citations omitted]) and whether the parent has stable housing and employment (see Matter of Durgala v Batrony, 154 AD3d at 1117; Matter of Sweeney v Sweeney, 127 AD3d at 1261).
With respect to the relevant factors, Family Court found that the father had not established or maintained substantial and consistent contact with the child. The court noted that the father made no effort to establish his paternity, necessitating DSS to commence a paternity proceeding, and that after paternity was established, he consistently missed scheduled visitations with the child. At the time of the hearing on these petitions, the father had five children with four different mothers and his current paramour was pregnant with his sixth child. The court noted that the father's failure to establish a relationship with the child was consistent with his relationship with his two oldest children. At the time of the hearing, the father was not seeing his two oldest children and had made no effort to enforce his right to visitation with them. Moreover, the father's housing situation has often been unstable. His two oldest sons were in the custody of the aunt for seven years and, during that time, he was unable to secure housing that would permit them to reside with him. The court further noted that the father resided with his current paramour and three children — soon to be four — and found that the father's current housing situation was unstable because the primary responsibility for child care fell to the paramour, who suffered from bipolar disorder, general anxiety disorder and depression and had a history of domestic violence and a previous finding against her of child neglect. The court also noted that the father was unemployed and was not actively seeking employment. In these circumstances, extraordinary circumstances existed.
We also find that the evidence supports Family Court's finding that an award of custody to the aunt was in the child's best interests. Factors to be considered in a best interests analysis include "maintaining stability in the child's life, the quality of the respective home environments, the length of time the present custody arrangement has been in place and each party's past performance, relative fitness and ability to provide for and guide the child's intellectual and emotional development" (Matter of Peters v Dugan, 141 AD3d 751, 753-754 [2016] [internal quotation marks and citations omitted]). The father was not seeking sole legal custody or physical placement of the child. In addition, repeated instances of domestic violence had [*3]occurred in the grandmother's home due to the grandfather's substance abuse. Although the grandmother testified that she understands that the grandfather's behavior is an unacceptable cause of turmoil in her home, Family Court noted that she has a history of continuing to maintain a relationship with him. The grandmother was arrested for shoplifting while accompanied by the mother and the child, and the record further established that the grandmother's living and financial situations are unstable. By contrast, the aunt owned her own home, worked two jobs and was able to raise her own children and have custody of — and provide for — the father's two oldest children for seven years. The aunt's father also helped her with child care. The record also showed that there had been no incidents in the aunt's home involving substance abuse or domestic violence. Based on this evidence, we find that Family Court's custody determination is supported by the record. Finally, Family Court correctly concluded that its award of custody to the aunt, pursuant to Family Ct Act article 6, also resolved the neglect proceeding (see Family Ct Act § 1052 [a] [vi]).
McCarthy, J.P., Devine, Aarons and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: In March 2016, the father filed a petition for custody of the child. At the hearing, he advised Family Court that he was modifying his petition to seek joint legal custody with the aunt, rather than sole custody, and primary physical custody with the aunt. Neither the father nor the mother appealed from the order or took part in this appeal.

Footnote 2: Family Court's determination that extraordinary circumstances existed, thereby permitting it to conduct a best interests analysis and consider placement with a nonparent, was improperly based solely on conditions related to the grandmother's situation. The requirement that extraordinary circumstances be established prior to conducting a best interests analysis exists to protect the superior custody rights of a parent. Thus, a threshold inquiry regarding extraordinary circumstances is properly made only when a parent is seeking custody and, in that event, must be based on a review of the parent's situation.